RECORD NO. 22-2106

In The

# United States Court of Appeals
### For The Fourth Circuit

## SUSAN K. CARPENTER,
**Trustee for H. Joe King, Jr. Revocable Trust,
on behalf and itself and all other similarly situated,**

*Plaintiff – Appellant,*

v.

## WILLIAM DOUGLAS MANAGEMENT, INC.;
## NEXTLEVEL ASSOCIATION SOLUTIONS, INC.,
## d/b/a HomeWiseDocs.com,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## AT CHARLOTTE

## JOINT APPENDIX

Mark R. Sigmon
Scott C. Harris
Patrick M. Wallace
Jeremy R. Williams
MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
900 West Morgan Street
Raleigh, North Carolina  27603
(919) 600-5003

*Counsel for Appellant*

Steven A. Meckler
Frederick M. Thurman, Jr.
SHUMAKER LOOP & KENDRICK, PLLC
101 South Tryon Street, Suite 2200
Charlotte, North Carolina  28280
(704) 945-2187

*Counsel for Appellee
  NextLevel Association Solutions, Inc.*

Jeffrey B. Kuykendal
MCANGUS, GOUDELOCK
  & COURIE, LLC
Post Office Box 30307
Charlotte, North Carolina  28230
(704) 643-6303

*Counsel for Appellee
  William Douglas Management, Inc.*

Philip M. Oliss
Alexander W. Prunka
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio  44114
(216) 586-7164

*Counsel for Appellee
  NextLevel Association Solutions, Inc.*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Appendix Page**

**Docket Entries**..................................................................................**JA1**

**Amended Class Action Complaint,**
**With Exhibits,**
    **filed January 13, 2021** .................................................**JA7**

    **Exhibits:**

    **A.**   **Defendant William Douglas Management, Inc.'s**
        **Response to Plaintiff's Requests for Admission**
           **dated September 2, 2020**...................................**JA46**

    **B.**   **Closing Letter Update**
           **dated March 27, 2020**........................................**JA54**

    **C.**   **Closing Disclosure**
           **dated April 2, 2020** ..........................................**JA62**

    **D.**   **Closing Letter**
           **dated March 2, 2020**.........................................**JA65**

**Defendant NextLevel Association Solutions, Inc.'s**
**Motion to Dismiss Plaintiff's Amended Complaint**
    **filed January 26, 2022** .................................................**JA74**

**Defendant William Douglas Management, Inc.'s**
**Motion to Dismiss Amended Complaint**
    **filed January 27, 2022** .................................................**JA77**

**Order of**
**The Honorable Robert J. Conrad, Jr.**
**Re: Granting Defendant Nextlevel Association Solutions Inc.'s**
**Motion to Dismiss Plaintiff's Amended Complaint and**
**Granting Defendant William Douglas Management, Inc.'s**
**Motion to Dismiss Amended Complaint**
     **filed September 29, 2022**........................................................................**JA79**

**Plaintiff's Notice of Appeal**
     **filed October 24, 2022**..........................................................................**JA92**

APPEAL,CLOSED

# U.S. District Court
## Western District of North Carolina (Charlotte)
## CIVIL DOCKET FOR CASE #: 3:21−cv−00019−RJC−DCK

Carpenter v. William Douglas Management, Inc. et al
Assigned to: District Judge Robert J. Conrad, Jr
Referred to: Magistrate Judge David Keesler
Case in other court:  Mecklenburg County Superior Court, 20
                       CVS 8415
                       4th Circuit, 22−02106
Cause: 28:1332 Diversity−Fraud

Date Filed: 01/13/2021
Date Terminated: 09/29/2022
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Susan K. Carpenter**
*on behalf of itself and all others similarly
situated*
*trustee for*
H. Joe King, Jr. Revocable Trust

represented by **Jeremy R. Williams**
Milberg Coleman Bryson Phillips
Grossman PLLC
900 West Morgan Street
Raleigh, NC 27603
919−600−5017
Fax: 919−600−5035
Email: jwilliams@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott C. Harris**
Milberg Coleman Bryson Phillips
Grossman, PLLC
900 W. Morgan Street
Raleigh, NC 27603
919−600−5000
Fax: 919−600−5035
Email: sharris@milberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick M. Wallace**
Milberg Coleman Bryson Phillips
Grossman, PLLC
900 West Morgan Street
Raleigh, NC 27603
919−600−5000
Fax: 919−600−5035
Email: pwallace@milberg.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**William Douglas Management, Inc.**

represented by **Jeffrey Brandt Kuykendal**
McAngus, Goudelock & Courie, LLC
6302 Fairview Road, Suite 700
P.O. Box 30307
Charotte, NC 28230
704−405−4575
Fax: 704−643−2376
Email: jeffrey.kuykendal@mgclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

JA1

**NextLevel Association Solutions, Inc.**
*doing business as*
HomeWiseDocs.com

represented by **Alexander Walton Prunka**
Jones Day
North Point
901 Lakeside Ave
Cleveland, OH 44114
216–586–1327
Fax: 216–579–0212
Email: aprunka@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip M. Oliss**
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114
216–586–7164
Fax: 216–579–0212
Email: poliss@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven Ari Meckler**
Shumaker, Loop & Kendrick
101 South Tryon Street
Suite 2200
Charlotte, NC 28280
704–375–0057
Fax: 704–332–1197
Email: smeckler@shumaker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frederick M. Thurman , Jr.**
Shumaker, Loop & Kendrick
101 South Tryon Street
Suite 2200
Charlotte, NC 28280–0002
704–375–0057
Fax: 704–332–1197
Email: fthurman@slk–law.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/13/2021 | 1 | NOTICE OF REMOVAL with Jury Demand from Mecklenburg County Superior Court, case number 20 CVS 8415. (Filing fee $ 402 receipt number 0419–4848263), filed by Nextlevel Association Solutions, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Thurman, Frederick) (Entered: 01/13/2021) |
| 01/13/2021 | 2 | Corporate Disclosure Statement by Nextlevel Association Solutions, Inc. (Thurman, Frederick) (Entered: 01/13/2021) |
| 01/14/2021 | | Case assigned to District Judge Robert J. Conrad, Jr and Magistrate Judge David Keesler. Notice: You must click this link to retrieve the **Case Assignment Packet**. *This is your only notice – you will not receive a separate document.*(tlj) (Entered: 01/14/2021) |
| 01/14/2021 | 3 | NOTICE of Appearance by Frederick M. Thurman, Jr on behalf of Nextlevel Association Solutions, Inc. (Thurman, Frederick) (Entered: 01/14/2021) |
| 01/14/2021 | 4 | NOTICE of Appearance by Steven Ari Meckler on behalf of Nextlevel Association Solutions, Inc. (Meckler, Steven) (Entered: 01/14/2021) |

| 01/14/2021 | 5 | Consent MOTION for Extension of Time to Answer *for Both Defendants* by Nextlevel Association Solutions, Inc.. (Thurman, Frederick). Motions referred to David Keesler. (Entered: 01/14/2021) |
|---|---|---|
| 01/14/2021 | 6 | **ORDER granting 5 Consent Motion for Extension of Time to Answer re 1 Notice of Removal. Defendants shall file Answers, or otherwise respond to Plaintiff's Complaint on or before February 3, 2021. Signed by Magistrate Judge David Keesler on 1/14/21. (mga)** (Entered: 01/14/2021) |
| 01/14/2021 | 7 | MOTION for Leave to Appear Pro Hac Vice as to Philip M. Oliss Filing fee $ 288, receipt number 0419–4850792. by Nextlevel Association Solutions, Inc.. (Thurman, Frederick). Motions referred to David Keesler. (Entered: 01/14/2021) |
| 01/14/2021 | 8 | MOTION for Leave to Appear Pro Hac Vice as to Alexander W. Prunka Filing fee $ 288, receipt number 0419–4850793. by Nextlevel Association Solutions, Inc.. (Thurman, Frederick). Motions referred to David Keesler. (Entered: 01/14/2021) |
| 01/15/2021 | 9 | **ORDER granting 7 Motion for Leave to Appear Pro Hac Vice. Phillip M. Oliss is hereby admitted pro hac vice to represent Defendant Nextlevel Association Solutions, Inc. Signed by Magistrate Judge David Keesler on 1/15/21. (mga)** (Entered: 01/15/2021) |
| 01/15/2021 | | Notice to Phillip M. Oliss: Pursuant to Local Rule 83.1 you are required to **Register** for ECF at www.ncwd.uscourts.gov. Deadline by 1/22/2021. (mga) (Entered: 01/15/2021) |
| 01/15/2021 | 10 | **ORDER granting 8 Motion for Leave to Appear Pro Hac Vice. Alexander W. Prunka is hereby admitted pro hac vice to represent Defendant Nextlevel Association Solutions, Inc. Signed by Magistrate Judge David Keesler on 1/15/21. (mga)** (Entered: 01/15/2021) |
| 01/15/2021 | | Notice to Alexander W. Prunka: Pursuant to Local Rule 83.1 you are required to **Register** for ECF at www.ncwd.uscourts.gov. Deadline by 1/22/2021. (mga) (Entered: 01/15/2021) |
| 01/19/2021 | 11 | NOTICE of Appearance by Philip M. Oliss on behalf of Nextlevel Association Solutions, Inc. (Oliss, Philip) (Entered: 01/19/2021) |
| 01/19/2021 | 12 | NOTICE of Appearance by Alexander Walton Prunka on behalf of Nextlevel Association Solutions, Inc. (Prunka, Alexander) (Entered: 01/19/2021) |
| 02/03/2021 | 13 | MOTION to Dismiss by William Douglas Management, Inc.. Responses due by 2/17/2021 (Kuykendal, Jeffrey). Motions referred to David Keesler. (Entered: 02/03/2021) |
| 02/03/2021 | 14 | MEMORANDUM in Support re 13 MOTION to Dismiss by William Douglas Management, Inc.. (Attachments: # 1 Exhibit 1 – Cedar Management Group, LLC's Brief in Support Motion to Dismiss, # 2 Exhibit 2 – General Assembly of North Carolina Session 2019)(Kuykendal, Jeffrey) (Entered: 02/03/2021) |
| 02/03/2021 | 15 | MOTION to Dismiss by NextLevel Association Solutions, Inc.. Responses due by 2/17/2021 (Oliss, Philip). Motions referred to David Keesler. (Entered: 02/03/2021) |
| 02/03/2021 | 16 | MEMORANDUM in Support re 15 MOTION to Dismiss by NextLevel Association Solutions, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Oliss, Philip) (Entered: 02/03/2021) |
| 02/10/2021 | 17 | MOTION for Extension of Time to File Response/Reply re: 15 MOTION to Dismiss , 13 MOTION to Dismiss by Susan K. Carpenter. Responses due by 2/24/2021 (Attachments: # 1 Proposed Order) (Williams, Jeremy). Motions referred to David Keesler. (Entered: 02/10/2021) |
| 02/10/2021 | 18 | **ORDER granting 17 Motion For Extension Of Time To Respond To Defendants Two Motions To Dismiss 13 . Plaintiff shall file responses to the pending motions to dismiss (Document Nos. 13 and 15 ), or in the alternative file an Amended Complaint pursuant to Fed.R.Civ.P. 15, on or before March 10, 2021. Signed by Magistrate Judge David Keesler on 2/10/21. (mga)** (Entered: 02/10/2021) |

JA3

| 02/12/2021 | 19 | MOTION to Remand to State Court by Susan K. Carpenter. Responses due by 2/26/2021 (Harris, Scott). Motions referred to David Keesler. (Entered: 02/12/2021) |
|---|---|---|
| 02/12/2021 | 20 | MEMORANDUM in Support re 19 MOTION to Remand to State Court by Susan K. Carpenter. (Harris, Scott) (Entered: 02/12/2021) |
| 02/26/2021 | 21 | MEMORANDUM in Opposition re 19 MOTION to Remand to State Court by NextLevel Association Solutions, Inc.. Replies due by 3/5/2021 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Oliss, Philip) (Entered: 02/26/2021) |
| 03/05/2021 | 22 | REPLY to Response to Motion re 19 MOTION to Remand to State Court *In Support of Motion* by Susan K. Carpenter. (Harris, Scott) (Entered: 03/05/2021) |
| 03/08/2021 | 23 | Joint MOTION re 15 MOTION to Dismiss , 13 MOTION to Dismiss *for Plaintiff to File a Consolidated Response to Defendants' Motions to Dismiss with Increased Pages, and Extension of Time for Defendants' Replies* by Susan K. Carpenter. Responses due by 3/22/2021 (Attachments: # 1 Proposed Order) (Harris, Scott). Motions referred to David Keesler. (Entered: 03/08/2021) |
| 03/08/2021 | 24 | **ORDER granting 23 Motion for Plaintiff to File A Consolidated Response To Defendants'' Motion To Dismiss With Increased Pages, And Extension Of Time For Defendant Replies. Plaintiff may file a consolidated response to Defendants pending motions to dismiss (Document Nos. 13 and 15), not to exceed thirty (30) pages, on or before March 10, 2021; Defendants shall file reply briefs in support of their motions to dismiss on or before March 31, 2021. Signed by Magistrate Judge David Keesler on 3/8/21. (mga)** (Entered: 03/08/2021) |
| 03/08/2021 |  | Set/Reset Deadlines as to 13 MOTION to Dismiss , 15 MOTION to Dismiss . Responses due by 3/10/2021 Replies due by 3/31/2021 (mga) (Entered: 03/08/2021) |
| 03/08/2021 | 25 | NOTICE of Appearance by Patrick M. Wallace on behalf of Susan K. Carpenter (Wallace, Patrick) (Entered: 03/08/2021) |
| 03/09/2021 | 26 | MOTION for Leave to File *Sur−Reply Memorandum in Opposition to Plaintiff's Motion to Remand* by NextLevel Association Solutions, Inc.. Responses due by 3/23/2021 (Oliss, Philip). Motions referred to David Keesler. (Entered: 03/09/2021) |
| 03/10/2021 | 27 | **ORDER granting 26 Defendant NextLevel Association Solutions, Inc.'s Motion for Leave to File Sur−Reply Memorandum in Opposition to Plaintiff's Motion to Remand. The sur−reply brief of five (5) pages or less, on or before March 15, 2021. Signed by Magistrate Judge David Keesler on 3/10/21. (mga)** Modified judge on 3/10/2021 (mga). (Entered: 03/10/2021) |
| 03/10/2021 |  | Set/Reset Deadlines as to 19 MOTION to Remand to State Court . Sur−Reply due by 3/15/2021 (mga) (Entered: 03/10/2021) |
| 03/10/2021 | 28 | RESPONSE in Opposition re 15 MOTION to Dismiss , 13 MOTION to Dismiss by Susan K. Carpenter. Replies due by 3/17/2021 (Harris, Scott) (Entered: 03/10/2021) |
| 03/15/2021 | 29 | Surreply as to 19 MOTION to Remand to State Court by NextLevel Association Solutions, Inc.. (Attachments: # 1 Exhibit 1)(Oliss, Philip) (Entered: 03/15/2021) |
| 03/19/2021 | 30 | NOTICE *of Supplemental Authority* by NextLevel Association Solutions, Inc. re 21 Memorandum in Opposition to Motion, 29 Surreply (Attachments: # 1 Exhibit 1)(Oliss, Philip) (Entered: 03/19/2021) |
| 03/31/2021 | 31 | REPLY to Response to Motion re 13 MOTION to Dismiss by William Douglas Management, Inc.. (Kuykendal, Jeffrey) (Entered: 03/31/2021) |
| 03/31/2021 | 32 | REPLY to Response to Motion re 15 MOTION to Dismiss by NextLevel Association Solutions, Inc.. (Oliss, Philip) (Entered: 03/31/2021) |
| 04/27/2021 | 33 | NOTICE *of Supplemental Authority* by Susan K. Carpenter (Attachments: # 1 Exhibit A − Order (USDC MD NC 1:21−cv−56))(Harris, Scott) (Entered: 04/27/2021) |
| 04/28/2021 | 34 | RESPONSE re 33 Notice (Other) *of Supplemental Authority* by NextLevel Association Solutions, Inc.. (Oliss, Philip) (Entered: 04/28/2021) |

JA4

| 06/04/2021 | 35 | NOTICE *of Fim Name And Email Address Change* by Susan K. Carpenter (Harris, Scott) (Entered: 06/04/2021) |
| 09/09/2021 | 36 | MOTION to Stay *by Defendants* by William Douglas Management, Inc.. Responses due by 9/23/2021 (Attachments: # 1 Memorandum Brief in Support of Defendants' Joint Motion to Stay, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E) (Kuykendal, Jeffrey). Motions referred to David Keesler. (Entered: 09/09/2021) |
| 09/23/2021 | 37 | RESPONSE in Opposition re 36 MOTION to Stay *by Defendants* by Susan K. Carpenter. Replies due by 9/30/2021 (Harris, Scott) (Entered: 09/23/2021) |
| 09/24/2021 | 38 | **MEMORANDUM AND RECOMMENDATIONS on 13 MOTION to Dismiss filed by William Douglas Management, Inc., 15 MOTION to Dismiss filed by NextLevel Association Solutions, Inc., 19 MOTION to Remand to State Court filed by Susan K. Carpenter, 36 MOTION to Stay *by Defendants* filed by William Douglas Management, Inc. Objections to M&R due by 10/8/2021. Signed by Magistrate Judge David Keesler on 9/24/2021. (brl)** (Entered: 09/24/2021) |
| 11/10/2021 | 39 | **ORDER adopting the Magistrate Judge's 38 Memorandum and Recommendations. Defendant William Douglas Management, Inc.'s 13 Motion to Dismiss is DENIED without prejudice. Defendant NextLevel Association Solutions, Inc.'s 15 Motion to Dismiss is DENIED without prejudice. Plaintiff's 19 Motion to Remand to State Court is DENIED. Defendant's Joint 36 Motion to Stay is GRANTED. The parties shall file a Joint Status Report on 12/15/2021 and every ninety (90) days thereafter, until the North Carolina Court of Appeals issues an opinion in Joseph Fleming et al v. Cedar Management Group, LLC. Signed by District Judge Robert J. Conrad, Jr on 11/10/2021. (brl)** (Entered: 11/10/2021) |
| 11/10/2021 | | Set/Reset Deadlines: Status Report due by 12/15/2021 (brl) (Entered: 11/10/2021) |
| 12/15/2021 | 40 | *Joint* STATUS REPORT by NextLevel Association Solutions, Inc. (Oliss, Philip) (Entered: 12/15/2021) |
| 12/22/2021 | 41 | Amended Corporate Disclosure Statement by NextLevel Association Solutions, Inc. (Oliss, Philip) (Entered: 12/22/2021) |
| 01/14/2022 | 42 | NOTICE *of Supplemental Authority (Joint)* by NextLevel Association Solutions, Inc. re 39 Order on Motion to Stay, Order on Memorandum and Recommendations, Order on Motion to Dismiss, Order on Motion to Remand to State Court, (Attachments: # 1 Exhibit 1)(Oliss, Philip) (Entered: 01/14/2022) |
| 01/18/2022 | | **TEXT−ONLY ORDER LIFTING STAY The parties are directed to file a Joint Amended Scheduling Order within 10 days of this Order. Amended Scheduling Order due by 1/28/2022. Entered by District Judge Robert J. Conrad, Jr on 1/18/2022. (brl)** (Entered: 01/18/2022) |
| 01/21/2022 | 43 | Joint MOTION for clarification by NextLevel Association Solutions, Inc., William Douglas Management, Inc.. Responses due by 2/4/2022 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Oliss, Philip). Modified to remove referral on 1/21/2022 (mga). (Entered: 01/21/2022) |
| 01/21/2022 | 44 | RESPONSE to Motion re 43 Joint MOTION for clarification by Susan K. Carpenter. Replies due by 1/28/2022 (Attachments: # 1 Exhibit 1 – Order Denying Motion to Publish, # 2 Exhibit 2 – PL_APPLLEE Rule 31 Petition for Rehearing en banc, # 3 Exhibit 3 – Plaintiff's Proposed Scheduling Order)(Williams, Jeremy) (Entered: 01/21/2022) |
| 01/26/2022 | | **TEXT−ONLY ORDER that the Court rescinds the January 18, 2022 text−only order as to the extent it directs the parties to file a Joint Amended Scheduling Order within 10 days. The stay remains lifted. Entered by District Judge Robert J. Conrad, Jr on 1/26/2022. (brl)** (Entered: 01/26/2022) |
| 01/26/2022 | 45 | MOTION to Dismiss by NextLevel Association Solutions, Inc.. Responses due by 2/9/2022 (Oliss, Philip). Modified to remove referral on 9/28/2022 (mga). (Entered: 01/26/2022) |

| 01/26/2022 | 46 | MEMORANDUM in Support re 45 MOTION to Dismiss by NextLevel Association Solutions, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Oliss, Philip) (Entered: 01/26/2022) |
|---|---|---|
| 01/27/2022 | 47 | MOTION to Dismiss *Amended Complaint* by William Douglas Management, Inc.. Responses due by 2/10/2022 (Kuykendal, Jeffrey). Modified to remove referral on 9/28/2022 (mga). (Entered: 01/27/2022) |
| 01/27/2022 | 48 | MEMORANDUM in Support re 47 MOTION to Dismiss *Amended Complaint* by William Douglas Management, Inc.. (Kuykendal, Jeffrey) (Entered: 01/27/2022) |
| 02/09/2022 | 49 | MEMORANDUM in Opposition re 45 MOTION to Dismiss *HomeWise* by Susan K. Carpenter. Replies due by 2/16/2022 (Attachments: # 1 Exhibit 1 – Attorney certificates for rehearing, # 2 Exhibit 2 – Order Denying Motion to Publish)(Harris, Scott) (Entered: 02/09/2022) |
| 02/10/2022 | 50 | MEMORANDUM in Opposition re 47 MOTION to Dismiss *Amended Complaint* by Susan K. Carpenter. Replies due by 2/17/2022 (Harris, Scott) (Entered: 02/10/2022) |
| 02/16/2022 | 51 | REPLY to Response to Motion re 45 MOTION to Dismiss by NextLevel Association Solutions, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Oliss, Philip) (Entered: 02/16/2022) |
| 02/17/2022 | 52 | REPLY to Response to Motion re 47 MOTION to Dismiss *Amended Complaint* by William Douglas Management, Inc.. (Kuykendal, Jeffrey) (Entered: 02/17/2022) |
| 09/29/2022 | 53 | **ORDER granting Defendant Nextlevel Association Solutions, Inc. d/b/a HomeWiseDocs.com's 45 Motion to Dismiss Amended Complaint; granting Defendant William Douglas Management, Inc.'s 47 Motion to Dismiss Amended Complaint. The Clerk of Court is directed to close this case. Signed by District Judge Robert J. Conrad, Jr on 9/29/2022. (brl)** (Entered: 09/29/2022) |
| 09/29/2022 | 54 | **CLERK'S JUDGMENT is hereby entered in accordance with the Court's Order dated 9/29/2022. Signed by Clerk, Frank G. Johns. (brl)** (Entered: 09/29/2022) |
| 10/24/2022 | 55 | NOTICE OF APPEAL as to 53 Order on Motion to Dismiss,,, by Susan K. Carpenter. *Use this link www.ca4.uscourts.gov to retrieve 4th Circuit case opening documents, i.e. Appearance of Counsel, Docketing Statement, Disclosure Statement, and Transcript Order Form.* Note: Your Transcript Order Form must be served on the District Court as well as the Circuit Court. (No fee required) (Harris, Scott) (Entered: 10/24/2022) |
| 10/24/2022 | 56 | Transmission of Notice of Appeal to US Court of Appeals re 55 Notice of Appeal (brl) (Entered: 10/24/2022) |
| 10/24/2022 | 57 | USCA Case Number [22−2106] for 55 Notice of Appeal, USCA Case Manager: Naeemah R. Sims. (ejb) (Entered: 10/25/2022) |
| 11/30/2022 | | Appeal Filing fee received: in amount of $ 505, receipt number 756 (cjs) (Entered: 11/30/2022) |

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 20 CVS 8415

SUSAN K. CARPENTER, Trustee of the
H. Joe King, Jr. Revocable Trust, on
behalf of itself and all others similarly
situated,

        Plaintiffs,

v.

WILLIAM DOUGLAS MANAGEMENT,
INC., and NEXTLEVEL ASSOCIATION
SOLUTIONS, INC. d/b/a
HOMEWISEDOCS.COM,

        Defendants.

**AMENDED CLASS ACTION
COMPLAINT**
Jury Trial Demanded

<u>Nature of the Action</u>

1.    This action involves unlawful and unreasonable charges of real estate "transfer fees" by Defendants William Douglas Management, Inc. ("William Douglas") a property management company, and NextLevel Association Solutions, Inc. ("HomeWise"), (collectively, "Defendants").

2.    Together, Defendants systematically and unlawfully charge exorbitant "transfer fees" in the hundreds of dollars to sellers of residential real estate properties in order for the ability to sell their homes.

3.    In particular, Defendants charge the transferor (e.g., the seller) of real property a "transfer fee" to provide a statement of unpaid assessments as well as for services that exclusively benefit the transferee (e.g., the buyer). A statement of

unpaid assessments certifies the amount that the selling homeowner owes in home owners associations ("HOAs") or condo owners associations ("COAs") (collectively, "OAs") assessments.

4.    For all practical purposes, a homeowner whose home is part of an OA cannot sell the home without a statement of unpaid assessments.

5.    For example, a title insurance company will not certify the seller's title is free and clear of any liens or other encumbrances, and the closing cannot occur.

6.    Defendants charge unreasonably high fees in order to provide statements of unpaid assessments, and represent or cause to represent to homeowners that the unreasonably high fees are legally "due" from them.

7.    However, Defendants have no legal basis to charge unreasonably high fees for statements of unpaid assessments.

8.    In essence and as discussed herein, Defendants merely make an arbitrary decision as to what to charge homeowners, claim the amount is legally "due", and collect payment.

9.    Plaintiff initiated this action to recover all unlawful "transfer fees" as well as all other statutory damages, penalties, and amounts they are entitled to as a result of Defendants' unlawful activity.

### Parties

10.    Susan K. Carpenter, Trustee of the H. Joe King, Jr. Revocable Trust ("Ms. Carpenter") is currently a citizen and resident of Charlotte, North Carolina.

2

11.    At all times relevant to this complaint Ms. Carpenter acted on behalf of the H. Joe King, Jr. Revocable Trust, and not in her individual capacity.

12.    Further, when any amounts were charged to Ms. Carpenter or paid by Ms. Carpenter, such amounts were charged to and paid on behalf of the H. Joe King, Jr. Revocable Trust and not to or by Ms. Carpenter individually.

13.    On April 2, 2020, Plaintiff sold a home located at 1236 Archdale Drive, Unit D, Charlotte, North Carolina 28217.

14.    In order to sell the home, Plaintiff was charged $150 for "HOA Transfer Fee to William Douglas Property Management".[1]

15.    William Douglas charged Plaintiff Resale Fees for the simple confirmation that the property owner was current on the payment of assessments to the OA at the time of the sale of the property.

16.    On April 3, 2020, Ms. Carpenter sold a home located at 8917 Hunter Ridge Drive, Charlotte, North Carolina.

17.    In order to sell the home, Plaintiff was charged a total of $215 for "Closing Letter and Documents Package (Including Transfer Fee)" by William Douglas. In addition, in order to sell the home, Plaintiff was also charged a total of $40 for "Closing Letter and Documents Package (Includes Transfer Fee)" by HomeWise.

---

[1] The April 2 and April 3 fees, as well as those routinely charged to putative class members, will be referred to herein as "Resale Fees" or "transfer fees".

3

18.    Defendants charged Plaintiff Resale Fees for the simple confirmation that the property owner was current on the payment of its assessments to the OA at the time of the sale of the property.

19.    Both the homes located at 1236 Archdale Drive and 8917 Hunter Ridge Drive were owned by the H. Joe King, Jr. Revocable Trust.

20.    William Douglas is a corporation organized under the laws of the State of North Carolina, with its principal office in Charlotte, North Carolina. William Douglas provides property management services to OAs throughout North Carolina, including Plaintiff's former OAs.

21.    NextLevel Association Solutions, Inc. d/b/a HomeWiseDocs.com ("HomeWise") is a corporation organized under the laws of the state of California, with its principal office in Fairfield, Connecticut. HomeWise provides Internet-accessible software based on automated processing systems that enable property managers, including William Douglas, to provide data and documents for real estate transactions.

### Venue & Jurisdiction

22.    The subject matter jurisdiction over this cause and personal jurisdiction are conferred upon and vested in this Court under and by virtue of G.S. §§ 1-75.4, 7A-240, and 7A-243.

23.    Venue for this cause is properly laid in this Court pursuant to and in accordance with G.S. § 1-82.

4

### The Role of Property Management Companies for OA Properties

24.    OAs routinely enter into agreements with property management companies, like William Douglas, to perform various services to the OAs.

25.    The services covered by property management agreements often include responsibilities such as: vendor hiring and management; cleaning and maintenance of amenities and common areas; preparation of budgets and guided advice for financial planning; regular inspection of properties to monitor and enforce compliance with community covenants; quarterly education for board members; and collection and tracking of assessment payments. William Douglas contracts with OAs for a specific fee to cover these services.

26.    William Douglas promotes itself as a "comprehensive" management firm, offering to provide all of the above services to the OAs it enters into agreements with, including Plaintiff's former OAs.

27.    William Douglas does not enter into agreements with homeowners whatsoever.

28.    In particular, William Douglas touts its abilities to manage OAs' assessment and collection policies, as well as its technological sophistication:

## HOA MANAGEMENT SERVICES
### WILLIAM DOUGLAS IS A LEADER IN TECHNOLOGY [2]

29.    To manage OAs' assessment and collection policies, William Douglas utilizes software to track the collection of OAs' assessments.

---

[2] https://wmdouglas.com (last visited June 5, 2020)

5

30.    William Douglas' community management services includes the collection and management of property owner information:



3

31.    William Douglas generates reports that reflect the status of unpaid assessments as part of its normal and ordinary course of business.

32.    The unpaid assessment statements will either list an amount owed or reflect a zero balance.

33.    Because of its regular tracking of assessment payments, the process of generating unpaid assessment statements is simple and inexpensive for William Douglas.

_____

3 https://wmdouglas.com/community-management/ (last visited June 5, 2020)

6

34. Upon information and belief, obtaining a statement of unpaid assessments merely requires a handful of keystrokes, and approximately five minutes or less of an employee's time.

35. After a handful of keystrokes and five minutes or less of time, William Douglas's software produces a statement of unpaid assessments.

### The Role of HomeWise

36. William Douglas is able to provide a statement of unpaid assessments so easily primarily because of HomeWise.

37. HomeWise developed and owns internet-accessible software that enables users (which are typically property management companies such as William Douglas) to electronically store OA governing documents, and to track the collection of assessments and other related information.

38. HomeWise enters into service agreements with property management companies, like William Douglas, for the use of HomeWise's software.

39. HomeWise prides itself on delivering services that provide "efficiency and responsiveness" to property managers.[4]

40. Defendants require that requests for statements of unpaid assessments be routed first through HomeWise. When a request for a statement of unpaid assessments is made through HomeWise, a William Douglas employee will receive the request, confirm that the homeowner does not have any unpaid assessments to the OA, and then documents that in the HomeWise system. A form

---

[4] *See* https://www.homewisedocs.com/solutions/owners-and-executives (last visited September 22, 2020)

7

document, that Defendants title "Closing Letter" (which is a statement of unpaid assessments) is then sent to the closing attorney who requested the statement of unpaid assessments through HomeWise.

41.    Homeowners in an OA managed by William Douglas do not contract, negotiate, or bargain with HomeWise for any of the services HomeWise provides to William Douglas.

42.    HomeWise and William Douglas invoice homeowners directly together, but as separate line items for services provided, each describing the charge as "Closing Letter and Documents Package (Includes Transfer Fee)". Defendants assert that these charges are "due" from homeowners, and require that homeowners pay these charges as part of the real estate closing.

## The Role of Statements of Unpaid Assessments in Real Estate Transactions

43.    Defendants provide statements of unpaid assessments as part of the sale, gift, conveyance, assignment, inheritance, or other transfer of an ownership interest in real property located in North Carolina.

44.    When Defendants provide statements of unpaid assessments upon the transfer of an ownership interest in real property as described above, Defendants charge Resale Fees payable upon the transfer of the interest in real property or payable for the right to make or accept such transfer.

45.    Defendants charge Resale Fees for the preparation of statements of unpaid assessments at the time of closing and requires Resale Fees to be paid at the closing of a real estate transaction.

8

46.    For all practical purposes, a homeowner whose home is part of an OA cannot sell the home without a statement of unpaid assessments.

47.    Absent a statement of unpaid assessments showing a zero balance, a closing attorney will not certify to a title insurance company that the title is free and clear of any OA liens for assessments.

48.    In addition, a statement of unpaid assessments showing a zero balance is often a condition of a lender in order to disburse loan funds.

49.    Under either scenario, a real estate transaction cannot close until a statement of unpaid assessments is provided by Defendants.

50.    In other words, a statement of unpaid assessments is an indispensable component of a residential real estate transaction involving properties within an OA.

51.    In particular, Plaintiffs closing attorney would not have certified to Plaintiffs title insurance company that the title was free and clear of any OA liens for assessments absent a statement of unpaid assessments, and a lender would not have disbursed loan funds absent a statement of unpaid assessments demonstrating a zero balance.

<u>Defendants' Charges for the Preparation of</u>
<u>Statements of Unpaid Assessments</u>

52.    Despite the ease with which Defendants can produce a statement of unpaid assessments and the minimal labor it requires, Defendants arbitrarily charge individuals like Plaintiffs and the Class members $175 or more.

53.    The vast majority of the fee charged by Defendants represents pure profit for them, only benefits Defendants, and exceeds the reasonable expectation of the Plaintiff and the Class members.

54.    Plaintiff and the Class have no manner in which to negotiate the amount of the fee charged, yet Plaintiff and the Class members are not be able to close on the sales of their homes unless they pay these unreasonable fees to Defendants.

55.    Upon information and belief, Defendants charge a fee for the statements of unpaid assessments to Plaintiff and the Class without regard to individual circumstances.

56.    Upon information and belief, Defendants performed no analysis regarding the actual cost to provide the statement of unpaid assessments when establishing the rate to charge Plaintiff and the Class.

57.    By charging unreasonable and unlawful "transfer fees" to transferors' of real property, Defendants effectively implement a sales penalty.

58.    While the transfer fees are ostensibly to provide a statement of unpaid assessments to the transferor of real property, a portion of the fee is actually attributable to services rendered to the transferee of the property.

59.    As part of the transfer fee charged to a selling homeowner, Defendants provides a number of post-sale services and activities exclusively for the buying homeowner that provide no benefit whatsoever to the selling homeowner.

10

60.    These services include updating new owner information, generating welcome kits, and mailing information to the buying homeowner.

61.    Defendants do not disclose to the seller that they are charging the seller for services rendered to the buyer.

### Defendants Have Only Two Potential Justifications for Charging Transfer Fees.

62.    There are only two potential ways for an entity, like Defendants, to lawfully charge Plaintiff and the putative class members with fees for statements of unpaid assessments.

63.    First the "transfer fee" could be charged under G.S. § 39A-1.1 *et seq.* Second, the "transfer fee" could be charged under G.S. §§ 47F-3-102(13) or 47C-3-102(12).

64.    Here, William Douglas has claimed through responses to Plaintiff's Requests for Admission that it had authority for this charge under G.S. § 39A-2(2)(h). *See* **Exhibit A**, p. 4.

65.    As explained below, Defendants actually had no legal basis whatsoever to charge for the "transfer fees" which they charged Plaintiff and the putative class.

### *Defendants Lack Authority to Charge for Statements of Unpaid Assessments under G.S. § 39A-1.1 et seq*

66.    General Statute 39A-1 *et seq.* (the "Transfer Fee Prohibition Act") was enacted in 2010. The Transfer Fee Prohibition Act did not state a new public policy in North Carolina relating to real property.

11

67.    Rather, it was a restatement of North Carolina's policy toward real property found in the 1973 Real Property Marketable Title Act.

68.    In 1973, the North Carolina legislature made it clear that all land in North Carolina should be "made freely alienable and marketable."

69.    An entity that imposes a transfer fee as part of the sale of real property is restricting the alienability and marketability of title.

70.    The Transfer Fee Prohibition Act formalized the prohibition against transfer fees in North Carolina.

71.    The Transfer Fee Prohibition Act lists the reasons why transfer fees violate this public policy of North Carolina, including because such fees impair "the marketability of title, impair "the transferability in real property" and constitute an "unreasonable restraint[] on alienation..." *See* G.S. § 39A-1(a).

72.    In order to preserve North Carolina's interest in the marketability of land, the legislature enacted the Transfer Fee Prohibition Act in 2010.

73.    That Act defines a "transfer fee" in G.S. § 39A-2 as:

> a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price, or other consideration given for the transfer.

74.    That definition continues, and identifies ten specific fees that are not considered transfer fees within the definition of G.S. § 39A-2.

12

75.     In other words, if a fee meets the definition of a "transfer fee" in G.S. §
39A-2(2) but does not meet any of the exceptions listed in G.S. § 39A-2(2)(a)-(j), then
the fee is an unlawful transfer fee.

76.     Relevant here is the exception identified in G.S. § 39A-2(2)(h), which
excludes from the definition of a transfer fee:

> Any reasonable fee charged for the preparation of
> statements of unpaid assessments pursuant to G.S. § 47F-
> 3-102(13) or resale certificates or statements of unpaid
> assessments pursuant to G.S. § 47C-3-102(12).

77.     The limitation of the fee to a "reasonable" amount necessarily means
that any *unreasonable* fee is a transfer fee within the definition of G.S. § 39A-2.

78.     The enforcement mechanism of the Transfer Fee Prohibition Act is
found in G.S. § 39A-3(b).

79.     Under this provision, "[a] person who records a transfer fee covenant,
files a lien that purports to secure payment of a transfer fee, *or enters into an
agreement imposing a private transfer fee obligation* shall be liable..." G.S. §
39A-3(b) (emphasis added).

80.     Put another way, there are three events that trigger liability: (1)
recording a transfer fee covenant; (2) filing a lien securing a transfer fee; and (3)
entering into an agreement to impose a transfer fee obligation.

81.     Thus, despite the title of § 39A-1 *et seq.* and the subtitle of § 39A-3, the
Transfer Fee Prohibition Act addresses unlawful activity outside of the narrow
definition of a transfer fee covenant.

13

82.   The available remedies under the Transfer Fee Prohibition Act demonstrates that the breadth of the statute exceeds beyond transfer fee covenants. For example, violation of the Transfer Fee Prohibition Act allows the injured party to recover "damages resulting from the imposition of the *transfer fee obligation*...including the amount of any transfer fee paid by a party to the transfer." G.S. § 39A-3(b)(1) (emphasis added).

83.   In addition, the Transfer Fee Prohibition Act "applies to (i) any transfer fee covenant that is recorded after July 1, 2010...*and* (iii) any agreement imposing a *private transfer fee obligation* entered into after July 1, 2010." G.S. § 39A-4(a) (emphasis added).

84.   William Douglas admits that it charged Resale Fees pursuant to G.S. § 39A-2(2)(h). *See* Ex. A, p. 4.

85.   In other words, William Douglas admits that Resale Fees are "transfer fees" under G.S. § 39A-2(2), but purportedly qualify for an exception under G.S. § 39A-2(h).

86.   However, because Defendants charge an *un*reasonable and unlawful amount to provide a statement of unpaid assessments, William Douglas's unreasonable "transfer fees" are transfer fees within the definition of G.S. § 39A-2 and fail to meet any exception listed in G.S. § 39A-2(a)-(j).

14

*Defendants Lack Authority to Charge for Statements of Unpaid Assessments under G.S. §§ 47F-3-102(13) or 47C-3-102(12)*

87.     To the extent that G.S. § 39A-1 *et seq.* is inapplicable, the only alternative statutory avenues to charge for statements of unpaid assessments are found in G.S. §§ 47F-3-102(13) and 47C-3-102(12).

88.     General Statute 47F-3-102 provides a list of powers an owners' association can exercise; likewise, § 47C-3-102 provides a list of powers a condominium owners' association can exercise.

89.     William Douglas's property management agreements with OAs allow William Douglas to exercise the powers listed in G.S. §§ 47F-3-102 an 47C-3-102.

90.     HomeWise has no agreement with OAs to exercise the powers listed in G.S. §§ 47F-3-102 an 47C-3-102 on their behalf.

91.     Until recently,[5] OAs under both Chapter 47F and 47C were allowed to charge a "reasonable "fee for providing statements of unpaid assessments. *See* G.S. § 47F-3-102(13) (allowing the association to "[i]mpose reasonable charges in connection with the preparation and recordation of documents, including...statements of unpaid assessments."); G.S. § 47C-3-102(12) (allowing the association to "[i]mpose reasonable charges for the preparation [of]...statements of unpaid assessments.").

---

[5] On July 2, 2020, Session Law 2020-90 was enacted that amended a number of various statutes, including substantively amending G.S. §§ 47F-3-12 and 47C-3-102 to create new subparagraphs that imposed new rights and responsibilities not then covered in the respective statutes. Notably, the "reasonable fee" may not exceed S200, as well as a new "expedite fee" that may not exceed $100. The July 2, 2020, amendment was a substantive amendment with only prospective effect.

15

92.    The "transfer fee" charged by Defendants to Plaintiff and the putative class members was not reasonable or lawful under either G.S. §§ 47F-3-102(13) and 47C-3-102(12).

93.    Defendants performed no analysis regarding the actual cost to provide the statement of unpaid assessments when establishing the rate to charge for the "transfer fee".

94.    The "transfer fee" charged to Plaintiff is unreasonably and unlawfully high for the services provided, bears no relationship to the actual cost of performing the services, exceeds the reasonable expectation of Plaintiff and class members, represents pure profit to Defendants, and was arbitrarily determined by Defendants.

95.    Because Defendants charge an unreasonable fee for statements of unpaid assessments, Defendants lacks authority under G.S. §§ 47F-3-102 and 47C-3-102 to charge for statements of unpaid assessments.

### Homeowners Do not Agree to Pay Defendants Unreasonable Fees

96.    Plaintiff and putative class members do not enter into written or oral contracts with Defendants, and therefore do not agree to the imposition of "transfer fees."

97.    Shortly before closing, Defendants send sellers form written correspondence, sometimes styled "Closing Letter." *See* Ex. B.

16

98.   The Closing Letter declares that the seller is required to pay a "transfer fee" at closing that is "due and payable directly to William Douglas Property Management."

99.   William Douglas does not and will not negotiate the amount it charges for a "transfer fee."

100.   The Closing Letter also declares that the seller is required to pay a "transfer fee" at closing that is "due" and "payable" directly to HomeWise.

101.   HomeWise does not and will not negotiate the amount it charges for a "transfer fee."

102.   Prior to claiming that the "transfer fee" is "due," Defendants do not explain or disclose the basis for the fee charged, or the purpose of the fee. Accordingly, Plaintiff and putative class members lack a full knowledge of all facts and circumstances and the means to obtaining such knowledge.

103.   Defendants cause the "transfer fee" to appear on required real estate settlement statement(s) alongside the final sales price, taxes, and other legal amounts to create the impression that the "certification fee" is likewise a legal charge when, in reality, it is not a legal charge.

### Defendants' Unlawful Charges to Plaintiff

104.   The H. Joe King, Jr. Revocable Trust owned two properties located at 8917 Hunter Ridge Drive, Charlotte, North Carolina (the "Hunter Ridge Property"), and 1236 Archdale Drive, Unit D, Charlotte, NC 28217 Charlotte, North Carolina (the "Archdale Property").

17

105.    The Hunter Ridge Property was located in the Lexington Commons subdivision, which contracted with William Douglas for various property management responsibilities, including those described in this Amended Complaint.

106.    One of William Douglas's responsibilities was to collect monthly assessments from property owners in the community.

107.    Plaintiff sold the Hunter Ridge Property on April 3, 2020.

108.    When she sold the Hunter Ridge Property, Plaintiff was charged a $215 fee from William Douglas. **Exhibit B.**

109.    Included in that $215 fee, was a $40 "rush fee," a $25 "Closing Letter Update" fee, and a $150 fee characterized by William Douglas as a "Closing Letter and Documents Package (Includes Transfer Fee)."

110.    In addition to the fees charged by Williams Douglas, Plaintiff was also assessed a $40 fee by a company called HomeWise for another item entitled "Closing Letter and Documents Package (Includes Transfer Fee)."

111.    In other words, Defendants apparently charged Plaintiff and the putative class for the same services.

112.    This made the total amount of Resale Fees that Defendants charged Plaintiffs on the Hunter Ridge Property sale $255.

113.    The fees that were charged by HomeWise to Plaintiff are really the charges that William Douglas should be paying to HomeWise for its use of HomeWise's systems. Instead, the Defendants have an agreement to pass these costs on to sellers like Plaintiff.

18

114.    Indeed, William Douglas does not pay HomeWise anything for its use of its software. Instead, HomeWise simply charges consumers like Plaintiff directly for the services that HomeWise renders to William Douglas.

115.    HomeWise, recognizing that its double charges could exceed statutory maximums in certain states for the services it provides, states on its website that its "pricing is established with management company approval."[6]

116.    Upon information and belief, the "update" fees charged by William Douglas and HomeWise were charged by these entities for re-confirming that Plaintiff was current on assessment payments after the closing of the property was delayed by approximately two weeks.

117.    The actions performed in exchange for these $25 and $5 fees, respectively, were the exact same actions taken to initially prepare the statement of unpaid assessments.

118.    On April 2, 2020 Plaintiff sold the Archdale Property. The Archdale Property was located in a separate neighborhood that was also managed by William Douglas.

119.    In order to sell the Archdale Property, Plaintiff was charged $150 by William Douglas. Again, this was charged to Plaintiff for the simple confirmation

---

[6] https://homewisedocshelp.zendesk.com/hc/en-us/articles/360022452732-What-if-the-price-exceeds-the-state-caps- (last accessed September 22, 2020) (stating in response the frequently asked question "What if the price exceeds the state caps?" that "The pricing is established with management company approval and includes the HomeWiseDocs fee.").

19

that Plaintiff was current on the payment of assessments to the HOA at the time of the sale of the Archdale Property.

120.   The closing attorney for that transaction reflected the fee on the closing statement for the property as "HOA Transfer Fee to William Douglas Property Management." **Exhibit C.** In addition, Plaintiff was charged another $25 fee by HomeWise related to this sale.

121.   The Resale Fees are fees charged by Defendants for the preparation of a statement of unpaid assessments and other services.

122.   The "Closing Letter," attached as **Exhibit D**, certifies that Plaintiff was current on the HOA dues, owing only the charges for the current month.

123.   That fee was purportedly charged by Defendants for providing the statement of unpaid assessments to Plaintiff in verifying that the assessments were current at the time of the sale of the home in all respects constituted a fee charged for preparing a statement of unpaid assessments.

124.   In reality, the Resale Fee also includes services that exclusively benefit the buyer of Plaintiff's property.

125.   As described above, due to William Douglas's usage of HomeWise's software to track the monthly collection of assessments, it simply took a couple of keystrokes and a matter of minutes to confirm that Plaintiff was not delinquent on its assessments.

126.   Upon information and belief, the "Closing Letter Update" and "Closing Letter" attached as **Exhibits B and D** are form documents that HomeWise's

software populates with property-owner specific information maintained in HomeWise's software.

127.    Since William Douglas already utilizes that software per its obligations to the OAs it serves, and because it utilizes software provided by HomeWise, William Douglas does not incur any new actual costs related to the determination that property owners such as Plaintiff and other putative class members are current on their assessment payments.

128.    Plaintiff did not negotiate, and was not provided an opportunity to negotiate, the amount of the "transfer fee", nor did they possess a full knowledge of all facts and circumstances and the means to obtaining such knowledge as to the "transfer fee."

### Class Action Allegations

129.    Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action on behalf of a proposed class and subclass defined as follows:

> Class: All individuals who paid fees to William Douglas for the preparation of statements of unpaid assessments pursuant to G.S. 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. 47(c)-3-102(12).

> Subclass: All individuals who paid fees to William Douglas and HomeWise for the preparation of statements of unpaid assessments pursuant to G.S. 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. 47(c)-3-102(12).

21

130. Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, assigns and successors; and (c) all persons and entities who timely and properly excludes himself or herself from the class.

131. Plaintiff reserves the right to alter the Class definitions as necessary to the full extent allowed by applicable law.

132. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

*Numerosity*

133. The size of the class and subclass are so large that joinder of all Class members is impracticable as plaintiff is informed and believe that they consist of hundreds, if not thousands of members.

*Commonality*

134. All questions, and their respective answers, concerning the reasonableness of the "transfer fees" charged by Defendants are common to the Class. Whether Defendant's charges violate G.S. § 39A-1 *et seq.* is a question common for all members of the class. Further, the answer to this question will drive other common answers in the litigation, including what a reasonable fee is for Defendants to charge for the provision of its certification that a home seller is

22

current on its OA assessments. Other common questions of law and fact include, but are not limited to:

a. Whether Defendants' charges for statements of unpaid assessments and resale certificates violated G.S. §§ 39A-1 *et seq.*, 47F-3-102, and/or 47C-3-102;

b. Whether Defendants' charges for unpaid assessments and resale certificates were reasonable;

c. Whether Defendants' charges for unpaid assessments bore any relationship to the actual costs incurred in preparing the statements of unpaid assessments and resale certificates;

d. Whether G.S. § 39A-2(2)(h) only permits charging of a reasonable fee for the preparation of unpaid assessments when the seller is delinquent on its payment of assessments and resale certificates;

e. What amount is a reasonable fee for Defendants to have charged for the preparation of unpaid assessments and resale certificates;

f. Whether Defendants negligently misrepresented the amount they could lawfully charge for unpaid assessment statements and resale certificates;

g. Whether Defendants had an agreement to charge fees for the preparation of unpaid assessments and resale certificates that exceeded the statutorily allowable amount; and

23

h. Whether Defendants violated the North Carolina Debt Collection Act by charging for unpaid assessment statements and resale certificates without legal authority.

### Predominance

135. These, and other common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice, and policy of uniformly charging unreasonable and excessive fees for the simple process of certifying that a property seller is current on the payment of their OA assessments.

### Typicality

136. The claims of the Plaintiff are typical of the proposed classes and all are based on the same facts and legal theories, as all such claims arise out of Defendants' conduct in that Defendants has a specific policy of charging unreasonable and excessive fees from each member of the Class.

### Adequate Representation

137. The Plaintiff is an adequate representative of the Class in that the Plaintiff does not have any antagonistic or conflicting claims with other members of the Class.

138. Plaintiff has also retained counsel experienced in the prosecution of complex class actions and consumer litigation.

139. Neither Plaintiff nor counsel have any interests that might cause them not to vigorously pursue this action.

24

140.   Plaintiff is aware of the responsibilities to the putative class and accepted such responsibilities.

*Superiority*

141.   A class action is superior to all other available methods for fair and efficient adjudication of this controversy.

142.   Plaintiff does not anticipate any difficulty in managing and maintaining this action as a class action.

143.   In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court.

144.   Further, Defendants have acted on grounds generally applicable to the proposed class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
### Violation of the North Carolina Prohibition on Transfer Fee Covenants
### G.S. § 39A-1, *et seq.*

145.   Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

146.   Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class.

147.   William Douglas is a person within the meaning of G.S. § 39A-3(b).

148.   Homewise is a person within the meaning of G.S. § 39A-3(b).

25

149.   Defendants charged Plaintiff and the putative Class members transfer fees subject to G.S. 39A-1 *et seq.*

150.   Transfer fees are unlawful in North Carolina unless expressly allowed by G.S. § 39A-2(2).

151.   The only cognizable and available exception for Defendants to charge the "certification fee" as described in this Complaint is found in G.S. § 39A-2(2)(h), which provides that the following are not transfer fees:

> Any reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. § 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. § 47C-3-102(12).

152.   Defendants' fees are not reasonable, because, *inter alia*, the fees bear no relation to the actual cost incurred by Defendants for providing statements of unpaid assessments, are arbitrarily determined, are pure profit to Defendants, are unreasonably high in light of the services provided, and exceed reasonable expectations of sellers.

153.   Because Defendants' fees are not reasonable, the entirety of the fees charged to and paid by Plaintiff and the Class violate G.S. § 39A-1, *et seq.*

154.   Plaintiff and the Class have been damaged because they have paid transfer fees to Defendants that were unlawfully charged by Defendants.

155.   Pursuant to G.S. § 39A-3(b), Defendants entered into an agreement with OAs to impose a private transfer fee obligation on Plaintiff and the class members.

26

156. As a result, Plaintiff and the Class are entitled to recover from Defendants the entirety of the unlawful fees that they paid, along with any other damages suffered to be proven at trial, and all attorneys' fees, expenses, and costs incurred in this action.

**SECOND CAUSE OF ACTION**
**Violation of the North Carolina Unfair and**
**Deceptive Trade Practices**
**G.S. § 75-1.1, *et seq.***

157. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

158. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class.

159. At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

160. The conduct of Defendants of charging unreasonable fees without any legal basis, under penalty of a cancelled or delayed closing, is against the established public policy of the State of North Carolina, is unfair, unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

161. Defendants' violations of the UDTPA include, but are not limited to:

    a. Charging unreasonable fees for the preparation of unpaid assessments;.

    b. Charging unreasonable fees to the transferor that fund post-sale activities and services that exclusively benefit the transferee;

27

c. Violating the express public policy of this State that favors the marketability of real property and the transferability of interests in real property;

d. Unfairly charging fees for preparation of statements that bear no relation to the actual cost of providing the statements;

e. Unfairly charging fees for preparation of statements that exceeded the reasonable expectation of consumers such as Plaintiffs and the members of the putative Class;

f. Deceptively claiming that "transfer fees" are legally owed when Defendants had no legal basis to claim the amount owed; and

g. Undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unfair, deceptive, misleading, coercive, and substantially injurious to consumers such as Plaintiff.

162.   The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiff and each member of the Class.

163.   Plaintiff and the Class suffered actual injury as a result of Defendants' unfair actions. Such injury consists of the gross overpayment for services rendered by Defendants and other damages as will be shown at trial of this action.

164.   Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General Statutes.

28

165.   Plaintiff and each member of the Class have been damaged and are entitled to recover treble damages, costs, and attorneys' fees incurred in this action.

### THIRD CAUSE OF ACTION
### Negligent Misrepresentation

166.   Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

167.   Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class.

168.   Defendants made material representations and/or caused representations to be made to Plaintiff and the Class members in closing documents that the "transfer fee" or other similar fee charged for the preparation of statements of unpaid assessments was lawfully owed and "due".

169.   When Defendants made these representations and/or caused these representations to be made, Defendants knew that the fees charged were unreasonable or had a reckless disregard for whether the fees were unreasonable.

170.   Defendants knew or ought to have known that Plaintiff and the Class members were relying on the representations.

171.   In reliance upon the material representations, Plaintiff and Class members used their funds to make payments to Defendants when the unreasonable fees charged for preparation of statements of unpaid assessments constituted unlawful transfer fees and were therefore barred by statute.

172.   Plaintiff and Class members could not have discovered Defendants' misrepresentations upon the exercise of reasonable inquiry, especially given that

29

they only learned of the unreasonable charges by Defendants at the time of closing, and have no opportunity to investigate the basis for Defendants' charges

173. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class members have been damaged as set forth in this complaint.

174. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<div align="center">

**FOURTH CAUSE OF ACTION**
**Violation of the North Carolina**
**Debt Collection Act**
**G.S. § 75-50 *et seq.***

</div>

175. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

176. Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class.

177. Plaintiff and each Class Member are a "consumer" as that term is defined by N.C. Gen. Stat. § 75-50.

178. The amounts purportedly owed to Defendants by Plaintiff and each member of the Proposed Class is a "debt," as that term is defined by N.C.G.S. § 75-50.

<div align="center">

30

</div>

179. At all times relevant to this action, Defendant William Douglas, in the ordinary course of business as a property management company engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1.

180. At all times relevant to this action, Defendant HomeWise, in the ordinary course of business as a software company rendering services to consumers engaged in acts or practices affecting commerce within the meaning of N.C.G.S. § 75-1.1

181. Defendants, in seeking to recover fees for unpaid assessment statements, are "debt collectors" as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

182. Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

183. Defendants are subject to the requirements of N.C.G.S. § 75-50 et seq., that prohibits certain activities by debt collectors.

184. Defendants violated N.C.G.S. § 75-51 by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take and actually taking action not permitted by law.

185. Defendants violated N.C.G.S. § 75-51(8) by threatening to take and taking actions not permitted by law, including, inter alia, assessing and collecting fees for unpaid assessment statements without a legal justification.

31

186. Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, inter alia, claiming that fees for unpaid assessment statements were owed without a legal justification.

187. Defendants violated N.C.G.S. § 75-54 by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, inter alia, assessing fees for unpaid assessment statements without a legal justification.

188. The sending of the Closing Letter that asserts the "transfer fees" are due and owing and attempting to collect those amounts when they were not owed violates N.C.G.S. § 75-50 *et seq.*

189. Defendants violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means.

190. Defendants violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means by representing that Plaintiff and Class Members owed unreasonable fees for unpaid assessment statements within the closing statements.

191. Defendants violated N.C.G.S. § 75-55 by collecting or attempting to collect debt by using unconscionable means by representing that Plaintiff and Class Members owed unreasonable fees for unpaid assessment statements when such unreasonable fees are against the public policy of North Carolina, and because

32

absent payment of Defendants' unreasonable fees the real estate transaction cannot close.

192. A violation of N.C.G.S § 39A-1 *et seq* constitutes an unfair debt collection attempt under N.C.G.S.§ 75-50 *et seq*.

193. Defendants' actions in violation of North Carolina's Unfair Debt Collection Act were willful.

194. Plaintiff and each member of the Class were injured by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. §75-56.

195. Plaintiff and each member of the Class were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

196. Plaintiff and each member of the Class are also entitled to recover treble damages pursuant to this claim.

<u>**FIFTH CAUSE OF ACTION**</u>
**Unjust Enrichment**

197. Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

33

198.   Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class.

199.   No contract existed between Plaintiff and each member of the putative Class, and Defendants.

200.   Plaintiff and each member of the putative Class conferred benefits on Defendants by paying the Resale Fees, which were received by Defendants.

201.   Defendants consciously accepted the Resale Fees and the Resale Fees were not conferred gratuitously or by an interference in the affairs of any other entity.

202.   It would be unjust for Defendants to retain the Resale Fees paid by Plaintiff and each member of the putative Class.

### SIXTH CAUSE OF ACTION
**Petition for Declaratory Judgment**
**G.S. § 1-253, *et seq.***

203.   Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully restated.

204.   Plaintiff brings this claim against Defendants individually and on behalf of members of the putative Class.

205.   Plaintiff and the members of the Class file this petition for a Declaratory Judgment under G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under that statute.

206.     Plaintiff and the members of the Class have an actual controversy with

34

Defendants regarding whether the fees charged by Defendants are reasonable for confirming that a seller is current on his or her OAs assessment payments.

207. Upon information and belief, Defendants charged the same, or similar amounts to Plaintiff and each member of the class upon the closing of the sale of their respective properties.

208. G.S. § 39A-1, *et seq* provides that transfer fees are prohibited in North Carolina.

209. But for an express exception in G.S. § 39A-2(2)(h), Defendants would never be allowed to charge a fee for confirming that a seller is current on his or her assessment payments.

210. G.S. § 39A-2(2)(h), however, provides that for purposes of Chapter 39A, the following fee is not considered a transfer fee:

> Any reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. § 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. § 47C-3-102(12).

211. The fee charged by Defendants to provide these services is not reasonable because it bears no relation to Defendants' actual costs for performing these services, among other reasons.

212. Therefore, Plaintiff and the Class seek a declaratory judgment that the fee charged by Defendants to provide these services is unreasonable and violates G.S. § 39A-2(2)(h).

## SEVENTH CAUSE OF ACTION
### Civil Conspiracy

213.  Plaintiff incorporates herein by reference each of the preceding paragraphs as if fully set forth herein.

214.  At all times relevant, there existed a conspiracy between and among Defendants William Douglas and HomeWise to charge consumers amounts for statements of unpaid assessments that were unreasonable and unlawful.

215.  This conspiracy and agreement, as set forth herein, was to do an unlawful act, or to do a lawful act in an unlawful way.

216.  William Douglas committed acts in furtherance of the conspiracy including, but not limited to, sending Plaintiff and the class members a "Closing Letter" that stated amounts were "due" and "payable" which in fact were not owed, charging amounts for the preparation of unpaid assessments which were unreasonable, and by charging sellers for services that are actually rendered to buyers without disclosing as much.

217.  HomeWise committed acts in furtherance of the conspiracy including, but not limited to, preparing the form document titled "Closing Letter" which represents that amounts are "due" and "payable" to Defendants which are in fact not due, and by charging amounts for the preparation of unpaid assessments which were unreasonable.

218.  As a direct, proximate, and foreseeable result of the acts by William Douglas and HomeWise, Plaintiff and the consumers have suffered damages in amounts exceeding $25,000, said amounts to be proven at trial.

36

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff and members of the proposed Class respectfully request that this Court:

1.     Certify the Class and Subclass, appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

2.     Award Plaintiff and each member of the Class and Subclass compensatory damages in an amount to be determined at trial;

3.     Treble the actual damages awarded to Plaintiff and each member of the Class and Subclass in accordance with G.S. §75-1.1;

4.     Award Plaintiff and each member of the Class and Subclass civil penalties of not less than $500 and not greater than $4,000 for each violation in accordance with G.S. § 75-50 *et seq.*;

5.     Award attorneys' fees, expenses, costs, and interest to Plaintiff and members of the Class pursuant to G.S. §§ 75-16.1, 39A-3, and other applicable law;

6.     Tax the costs of this action to Defendants jointly and severally;

7.     Allow a trial by jury on all issues so triable; and

8.     Grant Plaintiff and the members of the Proposed Class such other and further relief as the Court deems just and proper.


Respectfully submitted on this 24th day of September, 2020.


Scott C. Harris, Bar No. 35328

37

Patrick M. Wallace, Bar No. 48138
Jeremy R. Williams, Bar No. 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
scott@whitfieldbryson.com
pat@whitfieldbryson.com
jeremy@whitfieldbryson.com

38

**JA44**

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that he has this day caused a copy of the foregoing *First Amended Complaint* to be deposited, into the exclusive care, custody and control of the United States Postal Service to be sent via First Class Return Receipt Certified Mail to the following :

Jeffrey B. Kuykendal
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, NC 28230
Jeffrey.kuykendal@mcglaw.com

*Counsel for Defendant William Douglas Management, Inc.*

Date: September 24, 2020.

Scott C. Harris, NC Bar #: 35328
Patrick M. Wallace, NC Bar #: 48138
Jeremy R. Williams, NC Bar #: 48162
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
scott@whitfieldbryson.com
pat@whitfieldbryson.com
jeremy@whitfieldbryson.com

39

# EXHIBIT A

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20-CVS-8415

SUSAN K. CARPENTER, TRUSTEE OF
THE H. JOE KING, JR. REVOCABLE
TRUST, ON BEHALF OF ITSELF AND
OTHERS SIMILARLY SITUATED,

       Plaintiff,

v.

WILLIAM DOUGLAS MANAGEMENT,
INC.,

       Defendant.

**DEFENDANT WILLIAM DOUGLAS
MANAGEMENT, INC.'S RESPONSE
TO PLAINTIFF'S REQUESTS FOR
ADMISSION**

Defendant, WILLIAM DOUGLAS MANAGEMENT, INC., by and through undersigned

counsel, hereby responds to Plaintiff's *First Set of Requests for Admission* as follows:

## **GENERAL OBJECTIONS**

1.    WILLIAM DOUGLAS MANAGEMENT, INC. objects to the Requests to the

extent that they seek information and/or documents that are protected from discovery by the

attorney-client privilege, the work product doctrine and/or any other applicable privilege,

doctrine, exemption or immunity. The production of any document otherwise protected by the

attorney-client, work product, or other privilege is not and should not be considered a waiver of

any privilege or objection to production.

2.    WILLIAM DOUGLAS MANAGEMENT, INC. objects to the Requests to the

extent that they require the disclosure of confidential, proprietary, or otherwise protected

information.

3.    WILLIAM DOUGLAS MANAGEMENT, INC. objects to the Requests to the

extent that they seek information that is not relevant to the subject matter involved in the pending

action and not reasonably calculated to lead to the discovery of admissible evidence.

4.  WILLIAM DOUGLAS MANAGEMENT, INC. objects to the Requests to the extent that they require it to provide or search for any information that is not within its possession and/or is already possessed by Plaintiff, Plaintiff's counsel, or persons/entities who are not parties to this litigation.

5.  WILLIAM DOUGLAS MANAGEMENT, INC. reserves the right to supplement these Answers as discovery and investigation continue.

## RESPONSES TO REQUESTS FOR ADMISSION

1.  Admit that you created the document attached as Exhibit A to these Requests for Admission.

**RESPONSE: Admitted.**

2.  Admit that the document attached as Exhibit A contains a request for payment in the amount of $215.

**RESPONSE: Admitted.**

3.  Admit that you were paid the $215 charged by the document attached as Exhibit A.

**RESPONSE: Admitted.**

4.  Admit that the $215 charged to Plaintiff was for a certification that Plaintiff was not delinquent on his HOA assessments.

**RESPONSE: It is admitted the $215 charged was for multiple certifications and a rush fee related to whether the seller was delinquent on HOA assessments. Otherwise, denied.**

5.  Admit that the certification you provided was a statement of unpaid assessments.

2

**RESPONSE: Admitted.**

6.    Admit that you contend the $215 charge to Plaintiff was allowable under G.S. § 39A-1, et seq.

**RESPONSE: Admitted.**

7.    Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(a).

**RESPONSE: Objection.   This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

8.    Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(b).

**RESPONSE: Objection.   This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

9.    Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(c).

**RESPONSE: Objection.   This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

10.    Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(d).

**RESPONSE: Objection.   This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

11.    Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(e).

**RESPONSE: Objection.   This request seeks a legal conclusion rather than an**

3

admission of fact. Subject to and notwithstanding said objection, admitted.

      12.   Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(f).

      **RESPONSE: Objection.  This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

      13.   Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(g).

      **RESPONSE: Objection.  This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

      14.   Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(i).

      **RESPONSE: Objection.  This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

      15.   Admit that the $215 fee you charged to Plaintiff was not a fee charged under G.S. § 39A-2(2)(j).

      **RESPONSE: Objection.  This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

      16.   Admit that the $215 fee you charged to Plaintiff was a fee charged under G.S. § 39A-2(2)(h).

      **RESPONSE: Objection.  This request seeks a legal conclusion rather than an admission of fact.  Subject to and notwithstanding said objection, admitted.**

      17.   Admit that you have charged fees to other individuals for the preparation of statements of unpaid assessments in the last four years.

<div align="center">4</div>

**RESPONSE: Objection. This request is irrelevant and not likely to lead to the discovery of relevant information. Subject to and notwithstanding said objection, admitted.**

18.    Admit that those fees that you charged to other individuals for the preparation of statements of unpaid assessments in the last four years were charged under G.S. § 39A-2(2)(h).

**RESPONSE: Objection. This request is irrelevant and not likely to lead to the discovery of relevant information. Subject to and notwithstanding said objection, it is admitted other individuals were charged for the preparation of statements of unpaid assessments in the last four years under G.S. § 39A-2(2)(h). Otherwise, denied.**

19.    Admit that the fees you charged to other individuals for the preparation of statements of unpaid assessments in the last four years were not charged under G.S. § 39A-2(2)(a-i, or j).

**RESPONSE: Objection. This request is irrelevant and not likely to lead to the discovery of relevant information. Subject to and notwithstanding said objection, denied.**

20.    Admit that you have not charged fees to other individuals under G.S. G.S. § 39A-2(2)(a-i, and j) in the last four years.

**RESPONSE: Objection. This request is irrelevant and not likely to lead to the discovery of relevant information. Subject to and notwithstanding said objection, denied.**

21.    Admit that you did not pay any amount of the $215 fee you charged Plaintiff to any third parties.

**RESPONSE: Admitted.**

22.    Admit that you did not pay any amount of the fee you charged to other individuals under G.S. § 39A-2(2)(h) to any third parties.

5

**RESPONSE:** Objection. This request is irrelevant and not likely to lead to the discovery of relevant information. Subject to and notwithstanding said objection, admitted.

This the 2nd day of September, 2020.

JEFFREY B. KUYKENDAL
Bar No: 37693
Attorney for William Douglas Management,
Inc.
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, North Carolina 28230
(704) 643-6303
jeffrey.kuykendal@mgclaw.com

6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon all counsel of record by facsimile and by depositing a copy of the same in an official depository of the U.S. Mail in a postage-paid envelope addressed as follows:

        Scott C. Harris
        Patrick M. Wallace
        Jeremy R. Williams
        Whitfield Bryson & Mason, LLP
        900 West Morgan Street
        Raleigh, North Carolina 27603
        Attorney for Susan K. Carpenter

This the 2nd day of September, 2020.

_____

JEFFREY B. KUYKENDAL

7

# EXHIBIT B

USCA4 Appeal: 22-2106    Doc: 24    Filed: 01/04/2023    Pg: 58 of 96

## Closing Letter Update
### Lexington Commons Homeowners' Association Ltd.
### William Douglas Property Management

**Property Information:**
8917 Hunter Ridge Dr
Charlotte, NC 28226-4687
Seller: HARMON JOE KING, ESTATE
Buyer: NADYA VOLNY

**Requestor:**
Lancaster & Trotter, P.A.
Jennifer Peters
704-525-1702
Estimated Closing Date: 03-30-2020

| General Information | |
|---|---|
| This information is good through | 04-08-2020 |
| Is this account in collections? | No |
| What is the current regular assessment against the unit? | 173.26 |
| What is the frequency of the assessment charge? | Monthly |
| The regular assessment is paid through: | 03-31-2020 |
| The regular assessment is next due: | 04-01-2020 |
| What day of the month are regular assessments due? | 1st |
| How many days after the due date is the regular assessment considered delinquent? | 15 |
| The penalty for delinquent assessments is: | $20.00 per month |

| Specific Fees Due To Lexington Commons Homeowners' Association Ltd. | |
|---|---|
| Closing agent is required to collect the following number of additional regular assessments at closing: | 1 |
| Are there any current special assessments or governing body approved special assessments, against units within the association? If yes, a comment is provided. | No |
| Owner's current balance due (you may total the owners balance due using the breakdown below): | $0.00 |

| General Association Information | |
|---|---|
| Are there any violations against this unit? | No |
| Is the association or the developer (if the project has not been turned over to the homeowners association) involved in any current or pending litigation?  If yes, a comment is required. (Do not include neighbor disputes or rights of quiet enjoyment, litigation where the claim amount is known and the insurance carrier will provide defense and coverage, or where the HOA is named as a plaintiff in a foreclosure action or to collect past due assessments). | No |

| Insurance Information | |
|---|---|
| Insurance broker's or agent's company name: | IPFS Corporation |
| Identify the insurance agent's name: | J.M. Hamilton & Associates |
| Insurance agent's phone number: | 704-927-1165 |
| Insurance agent's fax number: | |
| Insurance agent's email address: | |

Please return check with barcode for faster processing

Page 1 of 7

USCA4 Appeal: 22-2106    Doc: 24    Filed: 01/04/2023    Pg: 59 of 96

**Closing Letter Update**
**Lexington Commons Homeowners' Association Ltd.**
**William Douglas Property Management**

**Property Information:**
8917 Hunter Ridge Dr
Charlotte, NC 28226-4687
Seller: HARMON JOE KING, ESTATE
Buyer: NADYA   VOLNY

**Requestor:**
Lancaster & Trotter, P.A.
Jennifer Peters
704-525-1702
Estimated Closing Date: 03-30-2020

**Michael Rayfield, Accounting Staff**

**William Douglas Property Management**

**Phone: 704-347-8900**

**Date: 03-27-2020**

Case 3:21-cv-00019-RJC-DCK   Document 1-3   Filed 01/13/21   Page 50 of 67

JA56

## Closing Letter Update
### Lexington Commons Homeowners' Association Ltd.
### William Douglas Property Management

**Property Information:**
8917 Hunter Ridge Dr
Charlotte, NC 28226-4687
Seller: HARMON JOE KING, ESTATE
Buyer: NADYA VOLNY

**Requestor:**
Lancaster & Trotter, P.A.
Jennifer Peters
704-525-1702
Estimated Closing Date: 03-30-2020

### Fee Summary

| | | |
|---|---|---|
| **Amounts Prepaid** | | |
| | Total | **$0.00** |
| **Fees Due to William Douglas Property Management** | | |
| | Rush Fee | $40.00 |
| | Closing Letter Update | $25.00 |
| | Closing Letter and Documents Package (Includes Transfer Fee) | $150.00 |
| | Total | **$215.00** |
| **Fees Due to Lexington Commons Homeowners' Association Ltd.** | | |
| | Prepaid Assessments | $173.26 |
| | Total | **$173.26** |
| **Fees Due to HomeWiseDocs.com (Service/Delivery Fees)** | | |
| | Rush Fee | $10.00 |
| | Closing Letter Update | $5.00 |
| | Closing Letter and Documents Package (Includes Transfer Fee) | $25.00 |
| | Total | **$40.00** |

Please return check with barcode for faster processing

Page 3 of 7

## Closing Letter Update
### Lexington Commons Homeowners' Association Ltd.
### William Douglas Property Management

**Property Information:**
8917 Hunter Ridge Dr
Charlotte, NC 28226-4687
Seller: HARMON JOE KING, ESTATE
Buyer: NADYA VOLNY

**Requestor:**
Lancaster & Trotter, P.A.
Jennifer Peters
704-525-1702
Estimated Closing Date: 03-30-2020

**PLEASE RETURN THIS FORM WITH YOUR CHECK AND CERTIFIED COPIES OF THE CLOSING DISCLOSURE FORM (FORMERLY THE HUD-1 FORM) AND THE GRANT OR WARRANTY DEED. PLEASE INDICATE CONFIRMATION NUMBER 6BZ68CPL2-up1 ON THE CHECK TO ENSURE PAYMENT IS CREDITED PROPERLY.**

| Fees Due to William Douglas Property Management | | |
|---|---|---|
| | Rush Fee | $40.00 |
| | Closing Letter and Documents Package (Includes Transfer Fee) | $150.00 |
| | Closing Letter Update | $25.00 |
| | **Total** | **$215.00** |
| **Fees Due to Lexington Commons Homeowners' Association Ltd.** | | |
| | Prepaid Assessments | $173.26 |
| | **Total** | **$173.26** |
| **Fees Due to HomeWiseDocs.com (Service/Delivery Fees)** | | |
| | Rush Fee | $10.00 |
| | Closing Letter and Documents Package (Includes Transfer Fee) | $25.00 |
| | Closing Letter Update | $5.00 |
| | **Total** | **$40.00** |

**Include this confirmation number 6BZ68CPL2-up1 on the check for $215.00 payable to and send to the address below.**

William Douglas Property Management

4523 Park Rd Suite 201A

Charlotte, NC 28209

**Include this confirmation number 6BZ68CPL2-up1 on the check for $173.26 payable to and send to the address below.**

Lexington Commons Homeowners' Association Ltd.

4523 Park Rd Suite 201A

Please return check with barcode for faster processing

Page 4 of 7

**Closing Letter Update**
**Lexington Commons Homeowners' Association Ltd.**
**William Douglas Property Management**

**Property Information:**
8917 Hunter Ridge Dr
Charlotte, NC 28226-4687
Seller: HARMON JOE KING, ESTATE
Buyer: NADYA  VOLNY

**Requestor:**
Lancaster & Trotter, P.A.
Jennifer Peters
704-525-1702
Estimated Closing Date: 03-30-2020

Charlotte, NC 28209

**Include this confirmation number 6BZ68CPL2-up1 on the check for $40.00 payable to and send to the address below. **Must return the HomeWiseDocs.com Invoice below with payment.****

HomeWiseDocs.com

5520 Kietzke Lane Suite 200

Reno, NV 89511

Please return check with barcode for faster processing

Page 5 of 7

**HomeWiseDocs.com Invoice**

Must be returned with check made payable to: HomeWiseDocs.com

Return to:

**HomeWiseDocs.com**
**5520 Kietzke Lane Suite 200**
**Reno, NV 89511**

------------------------------ fold here ------------------------------

------------------------------ fold here ------------------------------

Order:  **6BZ68CPL2-up1**

Property Information:
   8917 Hunter Ridge Dr
   Charlotte, NC 28226-4687

**Fees due to HomeWiseDocs.com:$40.00**

**NOTE:Other fees might be due and payable to the Management Company and/or HOA.
This page is available for your convenience to return payment to HomeWiseDocs.com.

Please return check with barcode for faster processing

Page 6 of 7

USCA4 Appeal: 22-2106    Doc: 24    Filed: 01/04/2023    Pg: 64 of 96

<div style="border:1px solid">

**Closing Letter Update**
**Lexington Commons Homeowners' Association Ltd.**
**William Douglas Property Management**

| | |
|---|---|
| **Property Information:** | **Requestor:** |
| 8917 Hunter Ridge Dr | Lancaster & Trotter, P.A. |
| Charlotte, NC 28226-4687 | Jennifer Peters |
| Seller: HARMON JOE KING, ESTATE | 4430 Park Road |
| Buyer: NADYA VOLNY | Charlotte, NC 28209 |
| | 704-525-1702 |
| | jennifer@ltp-law.com |

**Buyer and Seller Contact Information**

| | |
|---|---|
| **Seller's New Address:** | **Buyer's Address:** |
| | |
| Phone: | Phone: |
| Email: jennifer@ltp-law.com | Email: jennifer@ltp-law.com |
| | Is buyer occupant? Yes |

**Closing Information**

| | |
|---|---|
| File/Escrow Number: | Sales Price: |
| Estimated Close Date: 03-30-2020 | Closing Date: |
| Homewise Confirmation Number: 6BZ68CPL2-up1 | Homewise Transaction ID: 4979569 |

**Status Information**

| | |
|---|---|
| Date of Order: 03-26-2020 | Order Retrieved Date: |
| Board Approval Date: | Inspection Date: |
| Order Complete Date: 03-27-2020 | |

**Community Manager Information**

Company: William Douglas Property Management
Completed By: Michael Rayfield
Primary Contact: Michael Rayfield
Address:
4523 Park Rd Suite 201A
Charlotte, NC 28209
Phone: 704-347-8900
Fax:
Email: hw@wmdouglas.com

Please return check with barcode for faster processing                Page 7 of 7

</div>

# EXHIBIT C

# Closing Disclosure

## Closing Information

| | |
|---|---|
| Date Issued | 04/02/2020 |
| Closing Date | 04/02/2020 |
| Disbursement Date | 04/02/2020 |
| Settlement Agent | Norwood, Armstrong, & Stokes, PLLC |
| File # | 20-0165 |
| Property | 1236 D Archdale Drive<br>Charlotte, NC 28217 |
| Sale Price | $125,000 |

**Seller**　Susan K. Carpenter, as Trustee of the H. Joe King, Jr. Revocable Trust
1236 D Archdale Drive
Charlotte, NC 28217

## Summaries of Transactions

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | $125,000.00 |
|---|---|
| 01 Sale Price of Property | $125,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |

**Adjustments for Items Paid by Seller in Advance**

| 09 City/Town Taxes | |
|---|---|
| 10 County Taxes | |
| 11 Assessments | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | $9,480.36 |
|---|---|
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | $7,816.93 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 Due Diligence | $300.00 |
| 07 HOA Dues Proration　04/01/20-04/01/20 | $6.90 |
| 08 Seller Credit | $1,130.00 |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |

**Adjustments for Items Unpaid by Seller**

| 14 City/Town Taxes | |
|---|---|
| 15 County Taxes　01/01/20 to 04/02/20 | $226.53 |
| 16 Assessments | |
| 17 | |
| 18 | |
| 19 | |

### CALCULATION

| Total Due to Seller at Closing (M) | $125,000.00 |
|---|---|
| Total Due from Seller at Closing (N) | -$9,480.36 |
| Cash ☐ From ☒ To Seller | $115,519.64 |

## Contact Information

### REAL ESTATE BROKER (B)

| | |
|---|---|
| Name | Giving Tree Realty |
| Address | 1244 East Blvd.<br>Charlotte, NC 28203 |
| NC License ID | C19952 |
| Contact | James Massman |
| Contact NC License ID | 137887 |
| Email | jb.massman@givingtreerealty.com |
| Phone | |

### REAL ESTATE BROKER (S)

| | |
|---|---|
| Name | EXP Realty LLC |
| Address | 10130 Perimeter Parkway, #200<br>Charlotte, NC 28216 |
| NC License ID | C22682 |
| Contact | Megan N Huthert |
| Contact NC License ID | 285571 |
| Email | megan@hutherthomes.com |
| Phone | |

### SETTLEMENT AGENT

| | |
|---|---|
| Name | Norwood, Armstrong, & Stokes, PLLC |
| Address | 2133 Southend Drive<br>Suite 108<br>Charlotte, NC 28203 |
| NC License ID | |
| Contact | Kate Williams |
| Contact NC License ID | |
| Email | kate@norwoodarmstronglaw.com |
| Phone | |

CLOSING DISCLOSURE

PAGE 1 OF 2

# Closing Cost Details

| Loan Costs | | Seller-Paid | |
|---|---|---|---|
| | | At Closing | Before Closing |
| **A. Origination Charges** | | · | |
| 01  % of Loan Amount (Points) | | | |
| 02  Commitment Fee to American Security Mortgage Corp | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| **B. Services Borrower Did Not Shop For** | | | |
| 01  Appraisal Fee to ASMC FBO REALTY CONSULTING | | | |
| 02  Condo questionnaire to ASMC fbo Carriage House | | | |
| 03  Credit Report to ASMC FBO CREDIT PLUS | | | |
| 04  Flood Certification to ASMC FBO ServiceLink National Flood | | | |
| 05 | | | |
| **C. Services Borrower Did Shop For** | | | |
| 01  Title - Admin Fee to Norwood, Armstrong, & Stokes, PLLC | | | |
| 02  Title - Attorney Fee For Loan Closing to Norwood, Armstrong, & Stokes, PLLC | | | |
| 03  Title - Document Preparation to Norwood, Armstrong, & Stokes, PLLC | | $350.00 | |
| 04  Title - Lender's Title Insurance to Tryon Title Agency, LLC | | | |
| 05  Title - Mail Away Fee to Norwood, Armstrong, & Stokes, PLLC | | | |
| 06  Title - Payoff/Wire Handling Fee to Norwood, Armstrong, & Stokes, PLLC | | $75.00 | |
| 07  Title - Title Abstract and Examination to Norwood, Armstrong, & Stokes, PLLC | | | |
| 08  Title - Title Update/Recording Service to Norwood, Armstrong, & Stokes, PLLC | | | |

| Other Costs | | | |
|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | |
| 01  Recording Fees | Deed:   Mortgage: | | |
| 02  E-Recording Fee to Mecklenburg Register of Deeds | | | |
| 03  Transfer Tax to Mecklenburg Register of Deeds | | $250.00 | |
| **F. Prepaids** | | | |
| 01  Homeowner's Insurance Premium (   mo.) | | | |
| 02  Mortgage Insurance Premium (   mo.) | | | |
| 03  Prepaid Interest (   per day from   to   ) | | | |
| 04  Property Taxes (   mo.) | | | |
| 05 | | | |
| **G. Initial Escrow Payment at Closing** | | | |
| 01  Homeowner's Insurance | | | |
| 02  Mortgage Insurance | | | |
| 03  Property Taxes | | · | |
| 04  Aggregate Adjustment | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| **H. Other** | | | |
| 01  Commission - Listing Agent to EXP Realty LLC | | $3,125.00 | |
| 02  Commission - Selling Agent to Giving Tree Realty | | $3,125.00 | |
| 03  HOA Doc Prep Fee to HomeWiseDocs.com | | $25.00 | |
| 04  HOA Dues - April to The Carriage House Homeowners' Association Ltd. | | | |
| 05  HOA Dues - March to The Carriage House Homeowners' Association Ltd. | | $206.93 | |
| 06  HOA Transfer Fee to William Douglas Property Management | | $150.00 | |
| 07  Home warranty to Home Warranty of America | | $510.00 | |
| 08  Title - Owner's Title Insurance (optional) to Tryon Title Agency, LLC | | | |
| 09  Transaction Fee to Giving Tree Realty | | | |
| **J. TOTAL CLOSING COSTS** | | $7,816.93 | |

*CLOSING DISCLOSURE*

PAGE 2 OF 2

# EXHIBIT D

**Closing Letter**

**The Carriage House Homeowners' Association Ltd.**

**William Douglas Property Management**

**Property Information:**
1236 Archdale Dr Unit: Apt D
Charlotte, NC 28217-4356
Seller: Susan Carpenter
Buyer: Peter Kalambayi

**Requestor:**
Norwood Armstrong & Stokes, PLLC
Natalia Asnaymer
2133 SOUTHEND DR
CHARLOTTE, NC 28203
704-529-1100
natalia@norwoodarmstronglaw.com

**Buyer and Seller Contact Information**

**Seller's New Address:**



Phone: 704-529-1100
Email: natalia@norwoodarmstronglaw.com

**Buyer's Address:**
1236 Archdale Drive
Charlotte, NC 28217
Phone: 704-529-1100
Email: natalia@norwoodarmstronglaw.com
Is buyer occupant? Yes

**Closing Information**

File/Escrow Number:
Estimated Close Date: 03-31-2020
Homewise Confirmation Number: YYF9XLRGF

Sales Price: 127000.00
Closing Date:
Homewise Transaction ID: 4864875

**Status Information**

Date of Order: 02-18-2020
Board Approval Date:
Order Complete Date: 03-02-2020

Order Retrieved Date:
Inspection Date:

**Community Manager Information**

Company: William Douglas Property Management
Completed By: Michael Rayfield
Primary Contact: Michael Rayfield
Address:
4523 Park Rd Suite 201A
Charlotte, NC 28209
Phone: 704-347-8900
Fax:
Email: hw@wmdouglas.com

Please return check with barcode for faster processing

Page 7 of 7

## HomeWise    Homeowner's Association Question Letter
### The Carriage House Homeowners' Association Ltd.

Borrower: PETER KALAMBAYI
Address: 1236 Archdale Dr Unit: Apt D
Charlotte, NC 28217-4356

Certification Number: ZY5H3FSMJ
Date Project Last Updated: 03-02-2020
Date Ordered: 02-25-2020
Federal Tax ID #: 56-1247148

| **Project Agency Eligibility Data** | |
|---|---|
| 1. This association is a: | Condo |
| 2. Are the units within this project attached or detached? | Attached |
| 3. Is the project managed like a hotel or motel, even though the units are individually owned? | No |
| 4. Please check applicable boxes below if any of the comments are true regarding the project: | |

☐ Daily cleaning service is offered
☐ Interior doors that adjoin other units
☐ Project advertizes rental rates
☐ Project has central key systems
☐ Project has a central phone system
☐ Project has restrictions on interior decorating
☐ Project has a registration service
☐ Project is a conversion of a hotel or motel or other similar transient properties
☐ Project is located in a resort area (specific resort area)
☐ Project offers franchise agreements
☐ Room service is offered
☐ The Project includes the word hotel or motel in its name
☐ Units are typically sold furnished
☐ Units can be leased on a daily or weekly basis
☐ Units do not contain full-sized kitchens

| | | |
|---|---|---|
| 5. Does this association have a rental desk, short term occupancy or daily cleaning services? | | No |
| 6. Is the association a timeshare or segmented ownership project? | | No |
| 7. Is there an onsite rental office? | | No |
| 8. Does the association have an established rental pooling agreement that requires unit owners to either rent their units or give the management firm control over the occupancy of the units? | | No |
| 9. Does the project require "blackout dates" or continuous occupancy limitations for the unit owners? | | No |
| 10. Are any of the units under 400 square feet in size? | | No |
| 11. Is the association a houseboat project? | | No |

**h HomeWise**   **Homeowner's Association Question Letter**
**The Carriage House Homeowners' Association Ltd.**

| | | |
|---|---|---|
| 12. | Is the project a common interest apartment or community apartment project? (This is a project that is owned by several owners as tenants in common or by the homeowners association in which individuals have an undivided interest in a residential apartment and have the right to exclusive occupancy of a specific apartment building.) | No |
| 13. | Is the project an investment security (defined as projects that have documents on file with the Securities and Exchange Commission or projects where unit ownership is characterized as an investment opportunity). | No |
| 14. | Does the project have any non-incidental business operations owned or operated by the homeowners association (such as but not limited to a restaurant, spa, health club, etc.)? | No |
| 15. | Is the project a legal non-conforming use of land?  (Zoning requirements must allow the project to be rebuilt to encompass the same number of units or density in the event of full or partial destruction.  Answer "No" here if the project is legally conforming zoning.) | No |
| 16. | Are there any manufactured housing units within the project? | No |
| 17. | Is the project a conversion of an existing building? | Yes |
| | A.  Define the prior use of the building: | See Comments |
| | **Other** | |
| | B.  If yes, when did the conversion take place? | unknown |
| | C.  Is all rehabilitation work complete for the conversion? | Yes |
| | D.  Is the conversion a "gut rehabilitation" (meaning that the renovation of the property was down to the shell with replacement of all HVAC and electronic components)? | No |
| 18. | Is the association subject to inclusionary zoning (meaning some or all of the units may have restrictions on them including but not limited to age, income,etc.) which may affect future sales? | No |
| 19. | Does the association contain any commercial space? (Please define the use of the commercial space in the comments section of this question). | No |
| 20. | Does the project permit an owner to hold title (or stock ownership and the accompanying occupancy rights, for co-ops) to more than one dwelling unit, with ownership of all units (or shares) evidenced by a single deed and financed by a single mortgage (or share loan)? | No |
| 21. | Is the project a condominium hotel? | No |
| 22. | Is this project a site condominium (it contains all detached units but is still zoned as a condominium)? | No |
| 23. | Is the association an assisted living community providing meal or health care services?  If yes, describe the additional services provided in the comments section of this question. | No |
| 24. | Is any of the common area leased? | No |

Page 2 of 7

**HomeWise** **Homeowner's Association Question Letter**
**The Carriage House Homeowners' Association Ltd.**

| **Sales and Construction Status** | |
|---|---|
| 25. Are all of the units within the association completed? | Yes |
| 26. Are all of the common areas completed? | Yes |
| 27. Is the project subject to additional annexation or phasing? | No |
| 28. What year was the project built (completed)? | 1978 |
| 29. Date that control of the homeowners association was turned over or will be turned over to the unit owners: | 1981 |
| 30. Has control of the association been turned over to the unit owners? | Yes |
| 31. Is the association subject to a master or umbrella association? | No |
| 32. The association includes the following amenities: | |
| **Swimming Pool** | |

| **Occupancy Information** | |
|---|---|
| 33. Total number of units within the association: | 149 |
| 34. Total number of units sold and closed within the association: | 149 |
| 35. Total number of units sold but not closed within the association: | 0 |
| 36. How many units have onsite mailing addresses? | 75 |
| 37. How many units have offsite mailing addresses within the association? | 74 |
| 38. Total number of phases within this association. | Phase data is not tracked because the project is complete |
| 39. Are there individuals that own more than one unit within the project? | Yes |
| A. Does any individual or entity own more than 10% of the units within the association? | No |
| B. List multiple unit owners | |
| **Owner 1 owns 2 unit(s); Owner 2 owns 2 unit(s); Owner 3 owns 2 unit(s); Owner 4 owns 2 unit(s); Owner 5 owns 2 unit(s); Owner 6 owns 2 unit(s); Owner 7 owns 4 unit(s); Owner 8 owns 2 unit(s); Owner 9 owns 2 unit(s); Owner 10 owns 2 unit(s);** | |
| 40. Total number of units still owned by the developer: | 0 |
| 41. Total number of units owned by the developer that are completed and leased by the developer. | 0 |
| 42. Total number of units owned by the developer that are completed and are actively being sold. | 0 |

**h HomeWise** GMCS

# Homeowner's Association Question Letter
## The Carriage House Homeowners' Association Ltd.

### Assessments and Budget Information

| | | |
|---|---|---|
| 43. | Please indicate the dollar amount within the association's reserve account: | 220762.49 |
| 44. | Total number of unit owners currently more than 30 days delinquent in homeowner association assessments: | 0 |
| 45. | Total dollar amount of delinquencies (for the unit assessment over 30 days): | 0.00 |
| 46. | Total number of unit owners currently more than 60 days delinquent in homeowner association assessments: | 11 |
| 47. | Total dollar amount of delinquencies (for the unit assessment over 60 days) | 24710.03 |
| | A.  Assessments range from: | 176.31 |
| | B.  Assessments range to: | 255.52 |
| | C.  What is the frequency of the assessment charge? | Monthly |
| 48. | Are the taxes for the individual units included in the H.O.A fees? | No |
| 49. | Are the units separately metered for utilities? | No |
| | A.  IF the units are NOT separately metered for utilities, are plans in place to install separate meters? | See Comments |
| 50. | Utilities and services included in the unit assessment: | |
| | **Common Area Insurance, Landscaping, Sewer, Water** | |
| 51. | Are there any mortgages outstanding for the association (only include loans secured by real estate)? | No |
| 52. | Total reserves budgeted for the year: | 67542.00 |
| 53. | Is the HOA budget adequate, including funding of replacement reserves for capital expenditures, deferred maintenance (at least 10% of the budget), adequate funding for insurance deductible amounts and allocations for line items pertinent to the type of association? | See Comments |
| 54. | Total income budgeted for the year: | 385921.00 |
| 55. | Is the general maintenance level of the common elements acceptable and is there no deferred maintenance, based on the comments by the appraiser and/or the pictures? | See Comments |
| 56. | Are there recurring transfer fees paid to the developer? | No |

### Title and Ownership Information

| | | |
|---|---|---|
| 57. | Are all units owned fee simple? | Yes |
| 58. | Are any units owned as leasehold estates? | No |
| 59. | Are any of the common areas still owned by the developer? | No |
| 60. | Do the unit owners have sole ownership and the right to use the project's facilities? | Yes |

Page 4 of 7

### HomeWise   Homeowner's Association Question Letter
### The Carriage House Homeowners' Association Ltd.

| Legal Information | |
|---|---|
| **61.** Is there a right of first refusal clause contained within the association's governing documents? | No |
| **62.** Is the unit part of a condominium regime that provides for common and undivided ownership of common areas by unit owners? | Yes |
| **63.** Are there any provisions in the condominium project documents that give a condominium unit owner or any other party priority over any rights of the first mortgagee of the condominium unit pursuant to its mortgage in the case of payment to the unit owner of any condemnation or casualty loss that affects either a material portion of the project or the unit securing its mortgage? | See Comments |
| **64.** Do the legal documents of the Homeowner's Association contain language that protects the first mortgagee rights? | See Comments |
| **65.** Does the association have Articles of Incorporation and Bylaws?  If not what documents are used in lieu of Articles and Bylaws? | Yes |
| **66.** Is the association or the developer (if the project has not been turned over to the homeowners association) involved in any current or pending litigation?  If yes, a comment is required. (Do not include neighbor disputes or rights of quiet enjoyment, litigation where the claim amount is known and the insurance carrier will provide defense and coverage, or where the HOA is named as a plaintiff in a foreclosure action or to collect past due assessments). | No |
| **67.** Is asbestos, lead-based paint or any other environmental toxin present in any unit or common area of the development? If yes, a comment is required. | See Comments |
| **68.** If unit is taken over in foreclosure or deed-in-lieu of foreclosure, secondary market agencies (Fannie Mae, Freddie Mac and FHA) allow HOA assessment to have a limited priority over their first lien position.  Do the association governing documents or the state's statutes allow for the limited collection of past due assessments priority over the first lien position? | No |
| **69.** Is the project located in a jurisdiction that has enacted the Uniform Condo Act, Uniform Common Interest Ownership Act or similar statutes that provide for regular common expense assessments? | Yes |
| **70.** Are the units subject to "private transfer fee covenants" that have been created on or after February 8, 2011 as defined in FHFA regulation 75 FR 49932 ? | No |
| Homeowner Information | |
| **71.** Are there any current special assessments or governing body approved special assessments, against units within the association? If yes, a comment is provided. | No |
| Management Information | |
| **72.** What is the length of the current management contract (in years)? | 1 |
| **73.** Does the management contract require a penalty for cancellation or an advanced notice of at least ninety days? | No |
| **74.** Are two or more board members required to authorize disbursements from the reserve account? | Yes |

Page 5 of 7

| HomeWise | **Homeowner's Association Question Letter** |
|---|---|
| DOCS | **The Carriage House Homeowners' Association Ltd.** |

| | | |
|---|---|---|
| 75. | Does the homeowners association have separate records for the operating and reserve accounts? | Yes |
| 76. | Are monthly bank account statements being sent directly to the homeowners association? | Yes |
| 77. | Does the management firm have the authority to disburse funds from the reserve account? | Yes |

**Insurance Information**

| | | |
|---|---|---|
| 78. | Name of the insurance carrier for the association: | Nationwide Insurance |
| | A. Insurance broker's or agent's company name: | Nationwide |
| | B. Identify the insurance agent's name: | J.M Hamilton |
| | C. Insurance agent's phone number: | 704-364-0833 |
| 79. | Liability limit per occurrence for bodily injury: | view comments |
| 80. | Fidelity bond/employee dishonesty insurance amount: | view comments |
| 81. | Does the owners association carry adequate common area coverage and do all other coverages reflect the character, amenities and risks of the particular development? | See Comments |

**William Douglas Property Management**
**4523 Park Rd Suite 201A**
**Charlotte, NC 28209**

*Michael Rayfield*

**Michael Rayfield, Accounting Staff**

**William Douglas Property Management**

**Phone: 704-347-8900**

Page 6 of 7

**H HomeWise**    **Homeowner's Association Question Letter**
**The Carriage House Homeowners' Association Ltd.**

**Comments**

Question #17A unknown

Question #37 Offsite addresses may refer to, but are not limited to, rental units, P.O. boxes, second homes or places of employment.

Question #45 There was a $5000.00 insurance deductible that I did not include.

Question #49A unknown

Question #53 We make no warranty as to the adequacy of the budget in regards to reserves and capital expenditures. Budgets are prepared to adequately cover these expenses. Please see the Reserve Study, if available.

Question #55 We make no warranty as to the general maintenance level of the common elements. Please review the appraisal for this information.

Question #63 Please review the governing documents found at HomeWiseDocs.com for this association.

Question #64 Please review the legal documents available on HomeWiseDocs.com.

Question #67 To the best of our knowledge, there is no asbestos, lead-based paint or any other environmental toxins present at this time.

Question #77 W/written authorization

Question #79 Verify liability limit with insurance agent.

Question #80 Verify amount with insurance agent.

Question #81 Contact insurance agent for this information.

THIS DISCLOSURE IS INTENDED STRICTLY FOR THE USE OF REAL ESTATE AND LENDING PROFESSIONALS. THIS INFORMATION, WHILE DEEMED TO COME FROM RELIABLE SOURCES, IS NOT GUARANTEED. PROSPECTIVE BUYERS OF REAL ESTATE SHOULD SEEK APPROPRIATE AND COMPLETE DISCLOSURES FROM THE SELLER OF THE SUBJECT PROPERTY.

THE RESPONSES HEREIN ARE MADE IN GOOD FAITH AND TO THE BEST OF MY ABILITY AS TO THEIR ACCURACY.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:21-CV-00019-RJC-DCK

**SUSAN K. CARPENTER, Trustee of the H. Joe King, Jr. Revocable Trust, on behalf of itself and all others similarly situated,**

**Plaintiffs,**

**v.**

**WILLIAM DOUGLAS MANAGEMENT, INC. and NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS.COM,**

**Defendants.**

**HOMEWISE'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

 

**NOW COMES** Defendant, NextLevel Association Solutions, Inc. d/b/a HomeWiseDocs.com ("HomeWise"), pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, and hereby moves this Court for an Order dismissing Plaintiff's Amended Complaint in its entirety with prejudice. In accordance with Local Civil Rule 7.1(c), a memorandum in support of this Motion will be filed contemporaneously.

Dated:  January 26, 2022

/s/ Philip M. Oliss
Philip M. Oliss*
(Ohio Bar No. 66528)
Alexander W. Prunka*
(Ohio Bar No. 100431)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email:  poliss@jonesday.com
Email:  aprunka@jonesday.com

*Pro hac vice

/s/ Steven A. Meckler
Steven A. Meckler
(North Carolina Bar No. 26544)
Frederick M. Thurman, Jr.
(North Carolina Bar No. 26159)
Shumaker, Loop & Kendrick, LLP
101 South Tryon Street
Suite 2200
Charlotte, North Carolina  28280
Telephone: (704) 375-0057
Facsimile:  (704) 332-1197
Email:  smeckler@shumaker.com
Email:  fthurman@shumaker.com

Attorneys for Defendant NextLevel Association
Solutions, Inc. d/b/a HomeWiseDocs.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 26, 2022 I electronically filed a true and correct copy of the foregoing HomeWise's Motion to Dismiss Plaintiff's Amended Complaint with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

Dated: January 26, 2022

/s/ Philip M. Oliss
Philip M. Oliss*
(Ohio Bar No. 66528)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: poliss@jonesday.com

*Pro hac vice*

IN THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-019

SUSAN K. CARPENTER, trustee of the
H. Joe King, Jr. Revocable Trust, on
behalf of itself and all others similarly
situated,

     Plaintiff,

v.

WILLIAM DOUGLAS
MANAGEMENT, INC. and
NEXTLEVEL ASSOCIATION
SOLUTIONS, INC. d/b/a
HOMEWISEDOCS.COM,

     Defendants.

**MOTION TO DISMISS AMENDED COMPLAINT**

NOW COMES Defendant, William Douglas Management, Inc. ("WDM"), by and through counsel, and hereby moves the court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing Plaintiff's Amended Complaint as to any and all claims alleged against WDM.

This the 27th day of January, 2022.

/s/ Jeffrey B. Kuykendal
Jeffrey B. Kuykendal (Bar No: 37693)
Attorneys for William Douglas Management, Inc.
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, North Carolina 28230
(704) 643-6303
jeffrey.kuykendal@mgclaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date above I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Scott C. Harris
> Patrick M. Wallace
> Jeremy R. Williams
> Whitfield Bryson & Mason, LLP
> 900 West Morgan Street
> Raleigh, North Carolina 27603
> Attorney for Susan K. Carpenter
>
> Philip Oliss
> Alexander Prunka
> Jones Day
> 901 Lakeside Avenue
> Cleveland, Ohio 44114-1190
> Attorney for Nextlevel Association Solutions, Inc. d/b/a
> Homewisedocs.com
>
> Steven A. Meckler
> Frederick M. Thurman, Jr.
> Lucas D. Garber
> Shumaker, Loop & Kendrick, L.L.P.
> 101 S. Tryon Street. Suite 2200
> Charlotte, NC 28280
> Attorney for Nextlevel Association Solutions, Inc. d/b/a
> Homewisedocs.com

/s/ Jeffrey B. Kuykendal
Jeffrey B. Kuykendal

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00019-RJC-DCK

| | |
|---|---|
| SUSAN K. CARPENTER, on behalf of itself and all others similarly situated trustee for H. Joe King, Jr. Revocable Trust,<br><br>Plaintiff,<br><br>v.<br><br>NEXTLEVEL ASSOCIATION SOLUTIONS, INC. and WILLIAM DOUGLAS MANAGEMENT, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)       <u>Order</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** comes before the Court on Defendant Nextlevel Association Solutions, Inc. d/b/a HomeWiseDocs.com's ("HomeWise") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 45) and Defendant William Douglas Management, Inc.'s ("William Douglas") Motion to Dismiss Amended Complaint (together, the "Motions") (Doc. No. 47). For the reasons stated herein, the Motions are **GRANTED**.

I.     **BACKGROUND**

   A.  **Factual Background**

   According to the Amended Complaint, Plaintiff is the trustee of the H. Joe King, Jr. Revocable Trust, and acted in her capacity as the trustee in the events related to this case. (Doc. No. 1-3 ¶¶ 10-11). Defendant William Douglas is a property management firm, that offers property management services to home owners associations ("HOAs") and condo owners associations ("COAs") (collectively, "OAs"). (*Id.* ¶ 20). Defendant HomeWise provides internet-accessible software to property management companies that enables the companies to, among other things, track the collection of OA assessments. (*Id.* ¶¶ 21, 37). William Douglas utilizes

HomeWise's software for this service, but William Douglas does not pay HomeWise for its use; instead, HomeWise charges consumers directly for the services. (*Id.* ¶¶ 113-114).

Together Defendants provide statements containing any unpaid OA assessments in connection with the sale, gift, conveyance, assignment, inheritance, or other transfer of an ownership interest in real property (referred to herein as "statement(s) of unpaid assessments"). (*Id.* ¶ 43). When providing these statements, a requestor makes a request for a statement of unpaid assessments initially through HomeWise. (*Id.* ¶¶ 32, 40). Then, a William Douglas employee receives the request, determines whether the homeowner has any unpaid OA assessments, documents the amount owed or a zero balance in the HomeWise system, and sends a form document titled "Closing Letter" which is the statement of unpaid assessments. (*Id.*). The process to generate these statements requires a handful of keystrokes and approximately five minutes or less of the William Douglas employee's time. (*Id.* ¶¶ 33-35). Closing attorneys, title insurance companies, and lenders require statements of unpaid assessments; therefore, "for practical purposes" a homeowner cannot sell a home that is part of an OA without a statement of unpaid assessments. (*Id.* ¶¶ 46-50).

Defendants charge fees for these statements of unpaid assessments, invoiced to homeowners together, but as separate line items. (*Id.* ¶¶¶ 42, 52, 97, 100). The fees are paid as part of the real estate closing. (*Id.* ¶¶ 42, 45). The fees are charged without regard to individual circumstances, without performing an analysis regarding the actual cost to provide the statements, and the vast majority of the fees represent "pure profit" for Defendants. (*Id.* ¶¶ 53, 55-56). Neither Defendant contracts with homeowners in the managed OAs. (*Id.* ¶¶ 27, 41). Homeowners cannot negotiate with Defendants regarding the fees charged for providing the statements of unpaid assessments. (*Id.* ¶¶ 54, 99, 101).

2

On April 2, 2020, Plaintiff sold a home located at 1236 Archdale Drive, Unit D, Charlotte, North Carolina (the "Archdale Property). (*Id.* ¶¶ 104, 118). The Archdale Property is located in an OA that contracts with William Douglas for property management responsibilities. (*Id.* ¶ 118). When Plaintiff sold the Archdale Property, William Douglas charged her a $150 fee for a statement of unpaid assessments and other services. (*Id.* ¶¶ 119, 121). The closing attorney for the transaction reflected the fee on the closing statement for the property as "HOA Transfer Fee to William Douglas Property Management." (*Id.* ¶ 120). HomeWise also charged Plaintiff a $25 fee for preparation of the statement of unpaid assessments and other services. (*Id.* ¶¶ 120-121).

The next day, on April 3, 2020, Plaintiff sold a home located at 8917 Hunter Ridge Drive, Charlotte, North Carolina (the "Hunter Ridge Property"). (*Id.* ¶¶ 104, 107). The Hunter Ridge Property is located in an OA that contracts with William Douglas for property management responsibilities. (*Id.* ¶¶ 105-106). When Plaintiff sold the Hunter Ridge Property, William Douglas charged her a $215 fee, comprised of a $150 "Closing Letter and Documents Package (Includes Transfer Fee)" fee, a $40 "rush fee," and a $25 "Closing Letter Update" fee. (*Id.* ¶109). Additionally, HomeWise charged Plaintiff a $40 "Closing Letter and Documents Package (Includes Transfer Fee)" fee. (*Id.* ¶ 110). Therefore, in total the Defendants charged Plaintiff $255 for providing the initial Closing Letter and Documents Package and an updated Closing Letter and Documents Package to reconfirm that Plaintiff was current on her assessment payments when the closing of the Hunter Ridge Property was delayed by two weeks. (*Id.* ¶¶ 112, 116-117).

**B. Procedural Background**

On June 23, 2020, Plaintiff filed a class action Complaint in the Superior Court of Mecklenburg County against Defendant William Douglas, and soon after, she filed a class action Amended Complaint adding HomeWise as a Defendant. (Doc. No. 1; Doc. No. 1-3). Thereafter,

3

on January 13, 2021, HomeWise removed the action to this Court pursuant to 28 U.S.C. § 1332(d). (Doc. No. 1). The Amended Complaint brings the following individual and class claims against Defendants: (1) violation of N.C. Gen. Stat. § 39A-1, *et seq*. (the "North Carolina Transfer Fee Covenant Prohibition Act"); (2) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* (the "UDTPA"); (3) negligent misrepresentation; (4) violation of the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 *et seq.* (the "NCDCA"); (5) unjust enrichment; (6) declaratory judgment; and (7) civil conspiracy. (Doc. No. 1-3).

After the action was removed to this Court, Defendants each filed a motion to dismiss and Plaintiff filed a motion to remand the case to state court. (Doc. No. 13; Doc. No. 15; Doc. No. 19). The Court denied Plaintiff's motion to remand, denied Defendants' motions to dismiss without prejudice, and stayed the action pending a ruling by the North Carolina Court of Appeals in *Joseph Fleming et al v. Cedar Management Group, LLC*, because the *Fleming* case would "likely have a direct impact on this case." (Doc. No. 38; Doc. No. 39). The Court lifted the stay after the North Carolina Court of Appeals issued its decision in *Fleming*. Thereafter, Defendants filed the Motions to Dismiss. (Doc. No. 45; Doc. No. 47).

## II.    STANDARD OF REVIEW

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fannie Mae v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." *Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc.*, 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III.    DISCUSSION

### A.  North Carolina Transfer Fee Covenant Prohibition Act Claim

The North Carolina Transfer Fee Covenant Prohibition Act declares that North Carolina's public policy "favors the marketability of real property and the transferability of interests in real property free from title defects, unreasonable restraints on alienation, and covenants or servitudes that do not touch and concern the property." N.C. Gen. Stat. § 39A-1. "A transfer fee covenant

violates this public policy by impairing the marketability of title to the affected real property and constitutes an unreasonable restraint on alienation and transferability of property, regardless of the duration of the covenant or the amount of the transfer fee set forth in the covenant." *Id.* In accordance with this public policy:

> [a]ny transfer fee covenant or any lien that is filed to enforce a transfer fee covenant or purports to secure payment of a transfer fee, shall not run with the title to real property and is not binding on or enforceable at law or in equity against any subsequent owner, purchaser, or mortgagee of any interest in real property as an equitable servitude or otherwise.

N.C. Gen. Stat. § 39A-3(a). A "transfer fee covenant" is defined as "a declaration or covenant purporting to affect real property that requires or purports to require the payment of a transfer fee to the declarant or other person specified in the declaration or covenant or to their successors or assigns, upon a subsequent transfer of an interest in the real property." N.C. Gen. Stat. § 39A-2(3). The statute defines a "transfer fee" as:

> a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price, or other consideration given for the transfer.

N.C. Gen. Stat. § 39A-2(2). Specifically excluded from the definition of transfer fees are "[a]ny reasonable fee charged for the preparation of statements of unpaid assessments . . . ." N.C. Gen. Stat. § 39A-2(2)(h). The statute allows for damages, including the amount of any transfer fee paid, attorney fees, expenses, and costs to "[a] person who records a transfer fee covenant, files a lien that purports to secure payment of a transfer fee, or enters into an agreement imposing a private transfer fee obligation." N.C. Gen. Stat. § 39A-3(b).

Defendants argue Plaintiff's claim for violation of the North Carolina Transfer Fee Covenant Prohibition Act should be dismissed because (1) the statute prohibits transfer fee covenants, not transfer fees; (2) the fees charged in this case are not transfer fees within the

meaning of the statute; and (3) the transfer fees Defendants charged here are presumptively reasonable.  For purposes of the Motions, the Court need only address the second issue, whether the fees here were "transfer fees" as defined by the statute.  Whether the fees Defendants charged were transfer fees under the statute is a matter of statutory interpretation. "Statutory interpretation properly begins with an examination of the plain words of a statute. When a statute is clear and unambiguous, the Court will give effect to the plain meaning of the words without resorting to judicial construction." *Broad St. Clinic Found. v. Weeks*, 848 S.E.2d 224, 229 (N.C. Ct. App. 2020).

The statute defines a "transfer fee" as a fee or charge (1) "payable upon the transfer of an interest in real property," or (2) "payable for the right to make or accept such transfer."  N.C. Gen. Stat. § 39A-2(2).  "Payable" is a sum of money that "is to be paid."  Payable, *Black's Law Dictionary* (11th ed. 2019).  "An amount may be payable without being due." *Id.*  Due is defined as "immediately enforceable."  Due, *Black's Law Dictionary* (11th ed. 2019).  Thus, under the plain language of the statute, payable describes the fee or charge, and the fee or charge is "payable" when it gains the attribute that it is "to be paid."  Thus, the time at which the fee or charge is actually due or paid is not relevant to when the fee or charge is payable.  Here, the fees gained the attribute of "to be paid" upon the preparation of the statements of unpaid assessments, not upon the transfer of real property.  Indeed, the documents attached to the Amended Complaint show that an amount of money was owed to the Defendants for preparing the statements before closing.  In other words, the documents attached to Plaintiff's Complaint demonstrate that the fees became a sum of money to be paid, or "payable," when the statements were prepared, before the properties were transferred.  While Plaintiff ultimately paid the fees at closing, that is not relevant to when the fees became "payable."  Certainly, Defendants could have required Plaintiff to pay the fees

<div align="center">7</div>

prior to closing because the fees were payable before the transfer of real property.  Therefore, under the plain language of the statute, the fees at issue were payable at the time Defendants prepared the statements of unpaid assessments, not "upon the transfer of real property."  Similarly, the fees here were not "payable for the right to make or accept such transfer."  Instead, as noted, the fees were to be paid for Defendants' preparation of the statements of unpaid assessments.  The fact that certain third parties in some real estate transactions, such as lenders and closing attorneys, might require these statements does not make the fee for such statement payable "upon the transfer of real property" or "for the right to make or accept such transfer."

This conclusion is consistent with a similar recent unpublished opinion from the North Carolina Court of Appeals on this issue of first impression, *Fleming v. Cedar Management Group, LLC*, 866 S.E.2d 919 (N.C. Ct. App. 2022) (table).  In *Fleming*, in connection with plaintiffs' sale of their home, their HOA provided a statement of unpaid assessments certifying that plaintiffs were current on HOA dues.  *Fleming v. Cedar Management Group, LLC*, 866 S.E.2d 919 (N.C. Ct. App. 2022) (table).  The HOA charged the plaintiffs a $395 certification fee "due and payable" to the HOA's property management company.  *Id.*  Thereafter, the plaintiffs brought a class action suit against the property management company asserting a claim for violation of the North Carolina Transfer Fee Covenant Prohibition Act.  In affirming the superior court's dismissal of the plaintiffs' complaint, the North Carolina Court of Appeals concluded that the $395 certification fee was not a "transfer fee" under the statutory definition.  *Id.*  It reasoned that the fee charged to plaintiffs was payable on the preparation of the statement of unpaid assessments, not "payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer."  *Id.* (quoting N.C. Gen. Stat. § 39A-2(2)).  The court rejected plaintiffs' argument that a statement of unpaid assessments "is often a prerequisite to obtaining title insurance of financing

8

the purchase of real estate" because neither of those instances "constitutes the transfer of an interest in real property." *Id.*

While *Fleming* is not binding on this Court, it does provide some predictive value for the Court's application of North Carolina law.[1]  However, Plaintiff argues the Court should reach a different conclusion than the *Fleming* court.  First, Plaintiff argues the fees were payable upon the transfer of real property because the fees were paid at closing and the statements indicated the fees were paid at closing.  However, as noted, when the fees were due or ultimately paid is not relevant to when the fees gained the attribute of being "payable."  And the statements attached to the Amended Complaint demonstrate that the fees became "payable," or a sum of money to be paid, when Defendants prepared the statements of unpaid assessments, not upon the transfer of the real property.  Second, Plaintiff argues interpreting "transfer fees" as the court did in *Fleming* would render N.C. Gen. Stat. § 39A-2(2)(h), the provision excepting reasonable fees charged for the preparation of statements of unpaid assessments from the definition of transfer fees, as mere surplusage.  However, the Court must consider the plain language of the statute, and this argument puts "the cart before the horse" by raising exceptions before demonstrating the fees were "transfer fees" at all under the plain language of the statute.  *Id.*

Next, Plaintiff argues this interpretation ignores a published North Carolina Court of Appeals decision, *Wilner v. Cedars of Chapel Hill, LLC*, 773 S.E.2d 333 (2015).  In *Wilner*, the

---

[1] A federal court applying state law "is not free to reject [a] state rule merely because it has not received the sanction of the highest state court."  *C.F. Trust, Inc. v. First Flight Ltd.*, 306 F.3d 126, 137 (4th Cir. 2002) (alterations in original).  "Rather, when an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Id.* (quotation marks omitted). If an intermediate court's opinion is unpublished, such status "limits, but [does] not eliminate, its predictive value."  *Id.*

9

court considered, among other things, membership fees for a continuing care retirement community calculated as ten percent of the gross purchase price paid at closing. In considering whether the membership fees were "transfer fees," the court found the membership fees were excepted from the prohibitions in the North Carolina Transfer Fee Covenant Prohibition Act by another statute related specifically to continuing care retirement communities. The Plaintiff hangs her hat on a line in which the court stated, "those fees are not barred by the provisions of Chapter 39A, even though they might otherwise be considered transfer fees." However, the court did not analyze or otherwise conclude the membership fees were in fact transfer fees, and instead found another statute completely excepted the need to definitively determine whether the membership fees were transfer fees.[2] Finally, Plaintiff argues the Amended Complaint is distinct from the complaint in *Fleming* because it alleges that fees were payable upon transfer of real property. However, Plaintiff's conclusory allegations are insufficient to overcome the Motions.[3] Thus, the Court is not persuaded by Plaintiff's arguments to interpret the statute differently than the *Fleming* court.[4] And, in any event, as discussed above, the reasoning in *Fleming* is consistent with the Court's interpretation of the statute.

Accordingly, the fees here are not "transfer fees" as defined by the North Carolina Transfer

---

[2] The membership fees in *Wilner* are also materially different from the fees at issue in this case. In *Wilner*, residents that purchased an individual unit in the community were required to pay the membership fees "calculated as ten percent of the gross purchase price of a housing unit" and "paid at closing as part of the purchase price." *Wilner*, 773 S.E.2d at 390-91.

[3] Plaintiff also argues that Defendants admitted they charged transfer fees by the description of the fee in a letter pre-litigation and ambiguous discovery admissions. This argument is unpersuasive and the issue is a legal question for the Court to decide.

[4] Since *Fleming*, in a factually similar case, *Dernoshek v. FirstService Residential, Inc.*, at summary judgment, the court concluded "the fee charged for these statements is not a transfer fee, so there is no Chapter 39A claim." *Dernoshek v. FirstService Residential, Inc.*, Case No. 1:21-cv-00056-CCE-JLW (M.D.N.C. Sept. 23, 2022) (Eagles, J.). While the *Dernoshek* court did not analyze this issue in depth, in briefing the defendants in *Dernoshek*, like here, relied heavily on the reasoning in *Fleming* for this argument.

10

Fee Covenant Prohibition Act, and Plaintiff's claim is dismissed.

**B.  North Carolina Unfair and Deceptive Trade Practices Act**

In North Carolina, to state a claim for violation of the UDTPA, "a plaintiff must show: (i) that the defendant engaged in an unfair or deceptive act or practice; (ii) the act or practice was in or affecting commerce; and (iii) the act proximately caused injury to the plaintiff." *Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 685 (W.D.N.C. 2015). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and a "practice is deceptive if it has the capacity or tendency to deceive."  *Bumpers v. Comm. Bank of N. Va.*, 747 S.E.2d 220, 228 (N.C. 2013).  Whether a commercial act or practice is unfair or deceptive is a question of law. *Norman Owen Trucking, Inc. v. Morkoski*, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998).

Plaintiff alleges Defendants acts or practices were unfair or deceptive because they charged unreasonable fees for the statements of unpaid assessments, "under penalty of a cancelled or delayed closing," and as a result Plaintiff made "gross overpayment for services rendered by Defendants."  (Doc. No. 1-3 ¶¶ 160-165).  She alleges the fees were unreasonable for various reasons including, that the fees were excessive, the fees bore no relation to the actual cost of providing the statements, Defendants had no legal basis to claim Plaintiff owed the fees, Defendants both charged Plaintiff a fee for the statements, and that the fees were used to fund post-sale services that exclusively benefitted the buyer.

As an initial matter, Plaintiff's reliance on the North Carolina Transfer Fee Covenant Prohibition Act to support her UDTPA claim fails since the Court concludes the fees are not "transfer fees" under the statute.  Next, in North Carolina excessive fees alone do not support a UDTPA claim.  *Bumpers*, 747 S.E.2d at 228-29.  Particularly here, where the fees are less than

11

those in *Fleming* where the court dismissed the UDTPA claim on an excessive fee theory, and where the fees are within the reasonableness range set by the recently amended North Carolina statute. Next, Plaintiff's Complaint does not sufficiently allege how the remaining acts or practices were unfair or deceptive. Plaintiff alleges it was unfair or deceptive for each Defendant to charge Plaintiff a fee for the statements; however, each Defendant provided a different service or value to Plaintiff in order to obtain the statements. Further, it is not clear why it was unfair or deceptive for the Defendants to use the fees or profits to provide benefit to the buyer, except to assert that the fees were excessive and resulted in too much profit to Defendants. In addition, Plaintiff's alleged injury, that she made "gross overpayment for services rendered by Defendants" supports the conclusion that the claim is really one based on excessive fees. Therefore, Plaintiff's Amended Complaint fails to state a claim for violation of the UDTPA. *Fleming*, 866 S.E.2d 919 (dismissing North Carolina UDTPA claim based on allegations of unreasonable fees for statements of unpaid assessments).

### C. Remaining Claims

Plaintiff's remaining claims rest on her theory that the North Carolina Transfer Fee Covenant Prohibition Act prohibited the fees Defendants charged for preparing the statements of unpaid assessments, or that the fees were otherwise unlawful. First, Plaintiff's negligent misrepresentation claim alleges Defendants made material misrepresentations to Plaintiff in closing documents that the fees charged for preparation of the statements of unpaid assessments were lawfully owed and due. Next, Plaintiff alleges Defendants violated the NCDCA by assessing and collecting fees for statements of unpaid assessments without a legal justification. Additionally, Plaintiff's unjust enrichment claim alleges it was unjust for Defendants to retain the alleged transfer fees. Plaintiff's declaratory judgment claim is also based on her theory that Defendants

12

violated the North Carolina Transfer Fee Covenant Prohibition Act. However, Plaintiff's Complaint does not demonstrate that the fees were not actually lawfully owed and due. *Fleming*, 866 S.E.2d 919 (dismissing negligent misrepresentation, NCDCA, and declaratory judgment claims). Finally, a civil conspiracy claim fails when the underlying tort claims are dismissed. *Williams v. United Cmty. Bank*, 724 S.E.2d 543, 551 (N.C. Ct. App. 2012). For these reasons, Plaintiff's remaining claims are dismissed.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Nextlevel Association Solutions, Inc. d/b/a HomeWiseDocs.com's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 45) is **GRANTED**; and

2. Defendant William Douglas Management, Inc.'s Motion to Dismiss Amended Complaint (Doc. No. 47) is **GRANTED**.

The Clerk of Court is directed to close this case.

Signed: September 29, 2022

Robert J. Conrad, Jr.
United States District Judge

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil No. 3:21-cv-019-RJC-DCK

SUSAN K. CARPENTER, Trustee of the H.
Joe King, Jr. Revocable Trust, on behalf of
itself and all others similarly situated,

       Plaintiffs,

v.

WILLIAM DOUGLAS MANAGEMENT,
INC., and NEXTLEVEL ASSOCIATION
SOLUTIONS, INC. d/b/a
HOMEWISEDOCS.COM,

       Defendants.

**NOTICE OF APPEAL**

Pursuant to Rule 3 of the Federal Rules of Appellate Procedure, Plaintiff Susan K.

Carpenter hereby gives notice of appeal to the United States Court of Appeals for the Fourth Circuit

from the District Court's Order dated September 29, 2022 [D.E. 53] granting Defendant Nextlevel

Association Solutions, Inc. d/b/a HomeWiseDocs.com's Motion to Dismiss Plaintiff's Amended

Complaint [DE 45] and Defendant William Douglas Management, Inc.'s Motion to Dismiss

Amended Complaint  [DE 47].

Respectfully submitted, this the 24th day of October, 2021

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

*/s/ Scott. C. Harris*
Scott C. Harris
N.C. Bar No.: 35328
Jeremy R. Williams
N.C. Bar No.: 48162
Patrick M. Wallace
N.C. Bar No.: 48138
900 W. Morgan Street
Raleigh, North Carolina 27603

1

Telephone: (919) 600-5000
Facsimile: (919) 600-5035
jwilliams@milberg.com
sharris@milberg.com
pwallace@milberg.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that he has this day caused a copy of

the foregoing *Notice of Appeal* to be filed using the Court CM/ECF filing system which will send

notification of the filing to all parties of record.

Dated: October 24, 2022.                        Respectfully Submitted,


/s/ Scott C. Harris
Scott C. Harris
N.C. Bar No.: 35328
Patrick M. Wallace
N.C Bar No.: 48138
Jeremy R. Williams
N.C. Bar No.: 48162
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
sharris@milberg.com
 jwlliams@milberg.com
pwallace@milberg.com

*Attorneys for Plaintiff*

2