**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-2106**

---

SUSAN K. CARPENTER, trustee for H. Joe King, Jr. Revocable Trust, on behalf of itself and all others similarly situated,

                Plaintiff – Appellant,

      v.

WILLIAM DOUGLAS MANAGEMENT, INC.; NEXTLEVEL ASSOCIATION SOLUTIONS, INC., d/b/a HomeWiseDocs.com,

                Defendants – Appellees.

---

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, District Judge.  (3:21-cv-00019-RJC-DCK)

---

Argued:  October 25, 2023                 Decided:  March 14, 2025

---

Before RUSHING and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge Heytens and Senior Judge Keenan joined.

---

**ARGUED:** Lucy Noble Inman, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Raleigh, North Carolina, for Appellant.  Philip M. Oliss, JONES DAY, Cleveland, Ohio; Jeffrey Brandt Kuykendal, MCANGUS, GOUDELOCK, & COURIE, LLC, Charlotte, North Carolina, for Appellees.  **ON BRIEF:** Mark R. Sigmon, Scott C. Harris, Patrick M. Wallace, Jeremy R. Williams, MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC, Raleigh, North Carolina, for Appellant.  Brett

W. Bell, Alexander W. Prunka, JONES DAY, Cleveland, Ohio; Steven A. Meckler, Frederick M. Thurman, Jr., SHUMAKER LOOP & KENDRICK, LLP, Charlotte, North Carolina, for Appellee NextLevel Association Solutions, Inc.

———————

RUSHING, Circuit Judge:

Susan Carpenter sold two properties governed by homeowners' associations. As part of proving clear title to the properties before sale, Carpenter obtained a "statement of unpaid assessments" for each one. Carpenter now contends the fees she paid for those statements were excessive under North Carolina law. She sued in a purported class action, and the district court dismissed her complaint for failure to state a claim. We affirm.

I.

In April 2020, Carpenter, as trustee for the H. Joe King, Jr. Revocable Trust, sold two properties in North Carolina.[1] Because each property belonged to a homeowners' association, Carpenter's attorneys ordered a statement of unpaid assessments for each, to show that the property owner did not owe outstanding fees to the association.

The homeowners' associations for both properties were managed by William Douglas Management, Inc. William Douglas uses a platform provided by NextLevel Association Solutions, Inc., d/b/a HomeWiseDocs.com, to accept requests for real estate closing letters, which include statements of unpaid assessments.

A statement of unpaid assessments for the first property Carpenter sold cost her $175: $150 to William Douglas and $25 to HomeWise. The closing letter from William Douglas was dated March 2, 2020, and the sale occurred April 2, 2020. For the second property, William Douglas charged Carpenter $215 for what the invoice described as a

---

[1] Because this case comes to us on appeal from a motion to dismiss, we take the factual allegations in the complaint as true. *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023).

"Closing Letter and Documents Package (Includes Transfer Fee)," a fee to update that information for a rescheduled closing, and a rush fee. J.A. 57. HomeWise charged $40, allocated among the same three components. The invoice was dated March 27, 2020, and the sale occurred April 3, 2020.

Finding these fees excessive, Carpenter sued William Douglas and HomeWise in a class action complaint in North Carolina state court. She alleged that her experience is typical of sellers who own property subject to homeowners' associations. Lenders, closing attorneys, and buyers require a statement of unpaid assessments showing a zero balance before closing the sale. Most homeowners' associations contract with property management companies like William Douglas to track assessments and to generate the statements. By using the HomeWise software, Carpenter alleged, "it simply took [William Douglas] a couple of keystrokes and a matter of minutes to confirm that [the properties were] not delinquent on [their] assessments." J.A. 26. According to Carpenter, William Douglas and HomeWise charged homeowners excessive "transfer fees" in violation of a North Carolina law forbidding "transfer fee covenants." *See* N.C. Gen. Stat. § 39A-3. She also alleged violations of the State's Unfair and Deceptive Trade Practices Act, *see id.* § 75-1.1, and Debt Collection Act, *id.* § 75-50, *et seq.*, as well as negligent misrepresentation, unjust enrichment, and civil conspiracy.

HomeWise removed the case to federal court, and both defendants moved to dismiss the complaint for failure to state a claim. The district court dismissed the complaint in full because the fees Carpenter described in her complaint were not transfer fees as defined by

4

state law and the companies were not deceptive or unfair in charging them. Carpenter

appealed, and we have jurisdiction. 28 U.S.C. § 1291.

## II.

We review de novo a district court's dismissal of a complaint for failure to state a

claim. *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022); Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

When evaluating the sufficiency of a complaint, we accept the well-pleaded allegations as

true and draw all reasonable inferences in the plaintiff's favor. *Schilling v. Schmidt Baking

Co., Inc.*, 876 F.3d 596, 599 (4th Cir. 2017). However, we need not accept unwarranted

inferences or legal conclusions. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

"Because we are sitting in diversity, our role is to apply the governing state law, or,

if necessary, predict how the [S]tate's highest court would rule on an unsettled issue." *BP

Prods. N. Am., Inc. v. Stanley*, 669 F.3d 184, 188 (4th Cir. 2012) (internal quotation marks

omitted). When no decision from the State's highest court provides guidance on a question

of state law, we consult decisions of the State's intermediate appellate court. *Assicurazioni

Generali S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998). We may not decide a question

of state law differently than the State's intermediate appellate court has done in a decision

directly on point unless we are "'convinced by other persuasive data that the highest court

of the [S]tate would decide otherwise.'" *Id.* (quoting *West v. AT&T*, 311 U.S. 223, 237

(1940)).

5

A.

We begin with Carpenter's claim that the fees defendants charged for statements of unpaid assessments were unlawful transfer fees. "A transfer fee covenant" violates North Carolina public policy "by impairing the marketability of title to the affected real property" and imposing "an unreasonable restraint on alienation and transferability of property." N.C. Gen. Stat. § 39A-1(b). Accordingly, "[a] person who records a transfer fee covenant, files a lien that purports to secure payment of a transfer fee, or enters into an agreement imposing a private transfer fee obligation" shall be liable for damages and attorney's fees. *Id.* § 39A-3(b). A transfer fee is "a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer." *Id.* § 39A-2(2). The statute also lists ten charges that "shall not be considered a 'transfer fee' for the purposes of this Chapter," including "[a]ny reasonable fee charged for the preparation of statements of unpaid assessments pursuant to G.S. 47F-3-102(13) or resale certificates or statements of unpaid assessments pursuant to G.S. 47C-3-102(12)." *Id.* § 39A-2(2)(h).

The North Carolina Supreme Court has not elucidated the transfer fee statute, but it has articulated principles of statutory interpretation we must follow. In North Carolina, "[s]tatutory interpretation properly begins with an examination of the plain words of the statute." *JVC Enters. LLC v. City of Concord*, 855 S.E.2d 158, 161 (N.C. 2021) (internal quotation marks omitted). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *Id.* (internal quotation marks omitted).

6

The fees about which Carpenter complains do not satisfy either part of the statutory definition of "transfer fees." First, a transfer fee is a fee or charge "payable upon the transfer of an interest in real property." N.C. Gen. Stat. § 39A-2(2). "Payable" means a sum of money "that is to be paid." *Payable*, Black's Law Dictionary (9th ed. 2009).[2] "An amount may be payable without being due," *id.*, which means "[i]mmediately enforceable," *Due*, Black's Law Dictionary; *cf. Wing v. Goldman Sachs Trust Co., N.A.*, 876 S.E.2d 390, 398–399 (N.C. 2022) (consulting Black's Law Dictionary to define statutory terms). As the district court correctly explained, documents attached to Carpenter's complaint show that the charges for statements of unpaid assessments became a sum of money to be paid, or "payable," when those statements were prepared, not "upon the transfer" of the real property, which occurred later. N.C. Gen. Stat. § 39A-2(2); *see Carpenter v. NextLevel Assoc. Sols., Inc.*, 632 F. Supp. 3d 672, 677–678 (W.D.N.C. 2022). Carpenter alleges she paid the fees at the time of closing, as defendants required, but that does not disturb the district court's reasoning that the fees "gained the attribute of 'to be paid' upon the preparation of the statements." *Carpenter*, 632 F. Supp. 3d at 677. Alternatively, Carpenter argues—without any supporting authority—that "the transfer of an interest in real property" is not a single event but includes the entire process of preparing to transfer real property in advance of the closing date itself. We must reject this atextual construction, which would expand the statute's reach far beyond the words the General Assembly enacted.

---

[2] The North Carolina General Assembly enacted the transfer fee statute in 2010, so we consult a contemporaneous dictionary.

Second, a fee or charge "payable for the right to make or accept [the] transfer" of an interest in real property is also a "transfer fee." N.C. Gen. Stat. § 39A-2(2). The fees here do not qualify because they were to be paid for the statements of unpaid assessments, not for the right to transfer the property interests. Carpenter contends that, as a practical matter, she could not sell the properties without obtaining statements of unpaid assessments because lenders and closing attorneys require them. While the statements may be a prerequisite for financing and title insurance, defendants' fees are required to be paid in exchange for the statements they prepared, not for the right to make or accept the property transfer. Under the plain language of the statute, then, these charges are not "transfer fees."

The North Carolina Court of Appeals reached the same conclusion in a recent unpublished decision. *See Fleming v. Cedar Mgmt. Grp., LLC*, No. COA21-213, 2022 WL 29786 (N.C. Ct. App. Jan. 4, 2022), *review denied*, 883 S.E.2d 470 (N.C. 2023). Although unpublished North Carolina Court of Appeals opinions are not controlling legal authority, N.C. R. App. Proc. 30(e)(3), they still hold "predictive value" for federal courts interpreting and applying state law, *C.F. Trust, Inc. v. First Flight Ltd.*, 306 F.3d 126, 136 (4th Cir. 2002). The court in *Fleming* faced the same question we do here: whether a fee charged for a statement of unpaid assessments in connection with selling property governed by a homeowners' association was a transfer fee under North Carolina law. *Fleming*, 2022 WL 29786, at *1. We find the state court's interpretation of the state statute, applied to the same fact pattern we face, to be an instructive "datum for ascertaining state law." *Assicurazioni Generali*, 160 F.3d at 1002 (internal quotation marks omitted).

8

Considering a statement of unpaid assessments in *Fleming*, the North Carolina Court of Appeals reasoned that "a fee that is payable upon the preparation of such a statement is not the equivalent of a fee that is 'payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer.'" *Fleming*, 2022 WL 29786, at *3 (quoting N.C. Gen. Stat. § 39A-2(2)). The court was unmoved by the plaintiffs' argument that such a statement "is often a prerequisite to obtaining title insurance or financing the purchase of real estate." *Id.* As the court explained, "neither" title insurance nor financing "constitutes the transfer of an interest in real property," and paying for a statement necessary to obtain insurance or financing is not the equivalent of paying for "the right to make or accept such transfer." *Id.* (internal quotation marks omitted).

Carpenter offers two responses. First, she contends that a statutory "exception" covering "'reasonable fee[s]'" for "'statements of unpaid assessments'" provides "compelling evidence that the General Assembly viewed such fees for statements as transfer fees." Opening Br. 30 (quoting N.C. Gen. Stat. § 39A-2(2)(h)). As a reminder, the statute defines "transfer fee" by first identifying what the term means, *see* N.C. Gen. Stat. § 39A-2(2) ("'Transfer fee' means . . . ."), and then identifying what it does not mean, saying "[t]he following shall not be considered a 'transfer fee,'" followed by ten categories of excluded charges, among them, "[a]ny reasonable fee charged for the preparation of statements of unpaid assessments," *id.* § 39A-2(2)(h). Carpenter argues that the exclusion of reasonable fees must mean that unreasonable fees charged for the preparation of statements of unpaid assessments *do qualify* as transfer fees under the statute.

9

Her interpretation is flawed.  By identifying ten charges that are *not* transfer fees, the statute does not imply that any charges not excluded *are* transfer fees.  Nor does anything in the definitional statute, considered as a whole, imply that the excluded charges would qualify as transfer fees if not for the express exclusion.  *See* N.C. Gen. Stat. § 39A-2(2)(a)–(j).  As the *Fleming* court said, Carpenter's argument "put[s] the cart before the horse."  2022 WL 29786, at *2; *see also Carpenter*, 632 F. Supp. 3d at 679 (rejecting this argument).  The "threshold question" is whether defendants' charges for statements of unpaid assessments satisfy the statute's definition of "transfer fee."  *Fleming*, 2022 WL 29786, at *2.  Because they do not, we need not address whether any statutory exclusion applies.

This conclusion does not render the exclusions superfluous, as Carpenter contends.  Rather, the exclusionary paragraphs list common charges associated with real estate transactions that are outside the scope of the statute, irrespective of when they are payable.  For example, a realtor may agree that his commission will become payable only upon transfer of the property.  By listing realtors' commissions among the charges that are not transfer fees, the General Assembly clarified that the statute does not apply to such fees even if they are payable upon transfer.  *See* N.C. Gen. Stat. § 39A-2(2)(b).  That does not mean all realtors' commissions are transfer fees but are excepted by paragraph (b); it means that such commissions are never transfer fees, even if conditioned upon "the transfer of an interest in real property."  *Id.* § 39A-2(2).  The same is true for the exclusion of reasonable fees charged for the preparation of statements of unpaid assessments.  *Id.* § 39A-2(2)(h).

10

Carpenter's second response is no more persuasive. She emphasizes that defendants' own documentation refers to the charge for a "Closing Letter and Documents Package" as including a "Transfer Fee." J.A. 58. Whether that charge qualifies as a transfer fee within the meaning of North Carolina's statute, however, is a question of law for the court. *See McLeod v. Nationwide Mut. Ins. Co.*, 444 S.E.2d 487, 490 (N.C. 1994) ("The proper interpretation of . . . any statute[] presents a question of law."). And defendants have not conceded that question in this litigation.

In sum, the fees defendants charged Carpenter to prepare statements of unpaid assessments are not transfer fees under North Carolina law.[3] Carpenter, therefore, has failed to allege a violation of the North Carolina law prohibiting transfer fee covenants.

B.

Next, we consider Carpenter's claim that defendants' charges for statements of unpaid assessments violated North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA). Under the UDTPA, "unfair or deceptive acts or practices in or affecting commerce" are unlawful. N.C. Gen. Stat. § 75-1.1(a). To state a UDTPA claim, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[]." *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (internal quotation marks omitted). "A practice is

---

[3] This conclusion also disposes of Carpenter's declaratory judgment claim, although she does not mention that claim in her Opening Brief and so has waived any challenge to the district court's dismissal. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief . . . .").

unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Bumpers v. Comm. Bank of N. Va.*, 747 S.E.2d 220, 228 (N.C. 2013) (internal quotation marks omitted). Whether an act or practice is unfair or deceptive "is a question of law for the court." *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000).

As an initial matter, Carpenter's reliance on the transfer fee statute to support her UDTPA claim fails, since we have determined the charges are not transfer fees under Chapter 39A. Carpenter alternatively argues that, even if defendants did not technically violate the transfer fee statute, their charges nevertheless contravened the public policy underlying that statute and so violated the UDTPA. *See* N.C. Gen. Stat. § 39A-1(a). We must reject that argument. The General Assembly specified in Chapter 39A the conduct that violates the State's public policy favoring the marketability and transferability of real property. *See id.* § 39A-1(b) ("A transfer fee covenant violates this public policy . . . ."). We have no warrant to override the bounds of the General Assembly's decision and expand transfer fee liability by way of the UDTPA.

The remainder of Carpenter's UDTPA claim is based on allegations that defendants unfairly leveraged their role in the real estate transactions to charge excessive fees. The North Carolina Supreme Court has suggested that high prices alone are insufficient to support a UDTPA claim, although it has left open the possibility that fees could be "so high as to run afoul" of the statute. *Bumpers*, 747 S.E.2d at 228–229. In *Fleming*, the North Carolina Court of Appeals rejected an excessive pricing UDTPA claim when the plaintiffs paid $395 for a statement of unpaid assessments. 2022 WL 29786, at *1, *3. Like

12

Carpenter, the plaintiffs there alleged the fee was "unfair," bore "no relation to the actual cost of providing the statements," and "exceeded the reasonable expectation of consumers." *Id.* at *3 (internal quotation marks omitted). The court regarded these assertions as "little more than allegations of excessive pricing with insufficient factual support that the Fee was 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Id.* (quoting *Bumpers*, 747 S.E.2d at 228). So too here. Carpenter paid less than the *Fleming* plaintiffs and cannot state a UDTPA claim for excessive fees.[4] The district court, therefore, rightly dismissed Carpenter's UDTPA claim.

C.

Carpenter's remaining claims—unjust enrichment, violation of the North Carolina Debt Collection Act, negligent misrepresentation, and civil conspiracy—rise or fall with her transfer fee and UDTPA claims, as she concedes. *See* Oral Argument at 12:22–12:40; Opening Br. 64–66. Because Carpenter has failed to state a claim under Chapter 39A or the UDTPA, her other claims similarly cannot succeed.

*AFFIRMED*

---

[4] In July 2020, the General Assembly amended the homeowners' association statute to set a range of reasonable charges for the preparation of statements of unpaid assessments. *See* N.C. Gen. Stat. § 47F-3-102(13a). We observe that the fees defendants charged Carpenter in early 2020 fall within the statutory range.